NOONAN *v.* THE STATE, 1 Smedes and Marshall, 562.

### SELLING SPIRITUOUS LIQUOR TO SLAVE.

On the trial of an indictment for selling liquor to a slave, the statement of one present at the sale, " that the defendant did let the negro man have the whiskey," although made in the presence of the defendant, is not competent evidence, and being admitted, should have been excluded by the court from the jury.

The act of 1842, entitled " An act to regulate the mode of obtaining license, etc., and to amend an act entitled An act for the suppression of tippling houses, etc. ; approved February 9th, 1839," is constitutional.

The common law is recognized by the constitution as a part of the law of this state, but it may be altered or abolished by the legislative power.

On the trial of a person for the violation of this statute, it is not necessary to prove the particular kind of spirituous liquors by name; nor is it necessary to the proof of a person being a slave, to prove his master's name.

Under the plea of *autrefois acquit* or *convict*, the evidence is not necessarily and exclusively of record, but may be by parol, to the extent demanded by the circumstances of the case.

Error to the circuit court of Madison county.

The defendant was indicted at the November term, 1842, of the Circuit Court of Madison county, for "unlawfully retailing spirituous liquor to a negro man slave, without the permission then and there, of the master, etc., of said slave, contrary to the statute," etc. Plea "not guilty," and verdict "guilty." A motion was made to set aside the verdict, which was overruled, and the exceptions and evidence were embodied in the bill of exceptions.

The testimony is as follows:

John D. Scott testified on the part of the state, that a negro man of Captain Grigsby came to the store of witness and asked for plaintiff in error, stating that he wanted to get a flask or bottle of whiskey; the flask was empty; the negro went into defendant's store, followed by witness; when the negro entered the store, witness heard footsteps in the back room, and in a short time saw, at the front door of the store, the negro man, Noonan, and one or two other white men; the negro's flask was filled with whiskey; it was the same flask the negro had in the store of witness; witness asked the negro where he got it, who said "Noonan let him have it," which Noonan denied, looking down, however, and coloring in the face. One Hoyle was present at this conversation, and said "Noonan did let the negro have the whiskey." "Here the court (recites the bill of exceptions) rejected as testimony what the negro man had told or said to witness, and also rejected the denial made by Noonan, that he let the negro man have the whiskey, but refused to exclude the statement of Hoyle." This was all the evidence.

The errors assigned are:

1. The illegal testimony as to the statements of Hoyle, and

2. The unconstitutionality of the license law.

*Geo. Calhoun* for plaintiff in error.

The attention of the court is requested to the 5th and 8th sections of the statute, under which the indictment was found. The indictment is general, that defendant did unlawfully sell by

retail, spirituous liquors to a negro man slave, without permission of his master.

Counsel contended that the provisions of the above act, at once destroy all the rules of law in criminal prosecutions, as regards offenses under it.    Two things have always been deemed necessary to a legal conviction.    1. That the offense should be found by a grand jury; and 2. That the party should be found guilty by a petit jury, of the same offense.    If this is necessary, it becomes a matter of mere accident for the party to get a fair trial, when prosecuted under this act.    The old rule, that the indictment must so describe the offense, that the party will be enabled to prepare his defense, is abolished, and the grand jury may find the offense of selling to one slave, and the petit jury may convict the party for selling to another; the indictment being in general terms, the petit jury cannot ascertain from it, the offense found by the grand jury.    1 Chitty's Cr. Law, 169; Bac. Abr., title Indict, G.

But the 8th section of the act is unconstitutional.    The 10th section of the bill of rights provides, that the accused shall have the right to demand the nature and cause of the accusation; to be confronted by the witnesses against him, etc.    Here the charge is retailing to a negro man slave.    How was it possible for the party to know what negro man he was charged with retailing to ?    The prosecutor could direct the evidence to a sale to any negro slave, and it would be impossible for defendant to know what one, until it should be developed by evidence adduced on the trial.    Then, and then only, could the defendant *prepare* for his defense.    We feel confident that, upon a thorough investigation of this subject, the 8th section of this act will be found to be unconstitutional, that all the requisites of indictments in other cases, will be held necessary under it, and that the indictment in this case is defective.

*John G. Ott* on same side.

1. It is contended that the indictment is not sufficient for uncertainty; giving defendant no kind of notice of what he is charged with, so that he may prepare his defense.    "In all criminal prosecutions, the accused hath a right to demand the nature and cause of the accusation."    Const. Miss., art. 1, § 10.    Nor

does the 8th section of the act cure the defect, because it is like-
wise contended that that act is unconstitutional.  If this 8th
section is to be enforced as it stands, it is manifest that it gives
no kind of information to the accused, of the nature and cause
of the accusation, which the constitution secures to him.

At common law, the indictment would be bad for uncertainty,
and also for not having the name of the prosecutor marked
thereon.  Cody v. The State, 3 How., 27.  Indictments must be
certain as to the facts, circumstances, and intent constituting the
offense.  Arch. Crim. Pl., 41.  It must be positive.  Ib., 55.
This 8th section attempts to take away that protection designed
by the bill of rights, and gives him no opportunity of preparing
his defense.  The common law was in force in this state before
the adoption of the constitution.  Dig. Miss. Territory, p. 30.
And see Kent's Com., 463, note a.

As to the evidence, it may be justly said that there is none.
Scott only swears what he hears from Hoyle, a person present,
when the defendant denies having sold the liquor to the negro
man.  Hoyle's statement is but hearsay at best.  Scott proves
nothing, for he knows nothing.  A witness must testify from his
own knowledge of the facts, not from hearsay.  1 McNally's
Ev. 262, margin ed., 1811.

*J. D. Freeman,* attorney general.

THACHER, J.:

This case appears in this court by writ of error to the circuit
court of Madison county.

The plaintiff in error was indicted at the November term,
1842, of the said circuit court, under the statute of 1842, entitled
an "Act to regulate the mode of obtaining license to sell vinous
and spirituous liquors, and to amend the act entitled an ' act for
the suppression of tippling houses, and to prevent the odious
vice of drunkenness,' approved February 9th, 1839."  The in-
dictment was framed upon the 5th section of said act, by which
it was enacted, " that if any person, either with or without license
to retail, shall sell any vinous or spirituous liquors to any slave,
without permission of his or her master, mistress, owner or over-
seer, he, she or they offending shall be subject to indictment or

presentment, and upon conviction thereof, shall pay a fine of five hundred dollars, and shall be imprisoned in the common jail of the county for a period of not less than thirty nor more than ninety days; and upon the trial of any indictment under this section, if it be proven, the person to whom the liquor was sold was a negro or mulatto, that fact shall be received as *prima facie* evidence of his or her being a slave." Upon this indictment, the jury found a verdict of guilty.

Various points are made to this court, and insisted upon, as showing error in the judgment of the court below. We shall confine ourselves to one only for the purpose of judgment herein, but for general purposes, and to explain our judgment, we propose likewise to remark upon another point that was fully reviewed by counsel in the argument here.

It was objected below, that the court, upon the trial, refused to rule out a portion of the testimony of John D. Scott, who was introduced as a witness on the part of the state. That portion of his testimony where the part referred to occurs, is set forth in the bill of exceptions, thus: " Witness asked the negro man where he got it (a bottle of whisky)? and he said that Noonan had let him have it, and Noonan denied having sold the whisky to the negro man. That Noonan looked down and colored in the face greatly. That one Hoyle was present at this conversation, and said that Noonan did let the negro man have the whisky." This latter statement of what Hoyle said, the court below, upon application of defendant's counsel there, refused to rule out from the evidence.

The propriety of the judgment of the court below upon this application is fairly questionable here, as this court is not advised and cannot say how much the weight of that testimony might have affected and influenced the jury in finding their verdict. It is now insisted by the plaintiff in error, that the statement of Scott in relation to what Hoyle said, is hearsay evidence, and of a kind inadmissible on the trial; and by the state, to have constituted a part of the *res gestœ*, and therefore legitimate evidence for the jury.

To explain the character of a transaction, not only what was done, but what was said by all the parties during the transac-

tion is admissible.   In the celebrated trial of Lord George Gordon, the cries of the mob accompanying him were pronounced admissible to show the intention of its leaders.   The principle, however, seems to depend upon the existence of two attendant circumstances—that the testimony must relate to what was said by one connected with the act in question and during its progress.   The individual, Hoyle, was merely present at a conversation, in which he volunteered his remark about what defendant below had done ; and it does not appear that Hoyle was in anywise connected with the transaction save as an uninterested listener to a conversation.   What he is declared to have said, shows also that he would have been a witness to a material fact in the case, to wit, the delivery of the article alleged to have been sold ; and there is nothing to show that he might not have been produced on the trial.   It is well settled in 1 Starkie Ev., 31 (Phila. ed., 1834), that " where a witness to facts might be produced and examined on oath, little doubt can be entertained that hearsay evidence of his mere declaration, heard and detailed by another, ought to be excluded, so infinitely inferior in degree must such hearsay evidence be when compared with direct testimony delivered in open court."   In this connection, we would again remark, that as in the daily transactions of life, men are apt to receive and credit without scruple the statement by one man of what was said by another, and as the jury, in the instance under review, might have been directed to their conclusions solely by Scott's repetition of Hoyle's statement, if it was erroneously admitted by the court below, we cannot suffer the plaintiff in error to be prejudiced to that extent.   Considering it, then, abstractedly, as a question of testimony, we are forced to the conclusion that it was illegal evidence in this case, and should have been ruled out by the court below upon the application of the defendant's counsel.

In the argument of this case, great stress was made, and much reliance seemed to be placed by the counsel for the plaintiff in error upon the insufficiency of the indictment growing out of a supposed unconstitutionality of the statute under which it was framed.   As the attorney general expressed his own doubts upon the point, the court feels called upon to advance its opinion.

It is very true that under our constitution, no person can be
accused, arrested or detained, except in cases ascertained by law,
or deprived of his life, liberty or property, but by due course of
law, and that every accused hath a right to demand the nature
and cause of his accusation, and that his right to a trial by jury
shall be inviolate.   In what does this statute infringe either of
these personal rights and privileges?   It is said that at the
adoption of our constitution there was included the common
law as a part of the law of the land, and that it would now be
an unconstitutional act to alter or repeal by legislature any prin-
ciple, rule, or law, that was then a part of the common law.
That, indeed, which was the common law at that juncture, was
in fact incorporated into our constitution, and, consequently, not
subject to any power short of that of the people themselves, in
the exercise of their inherent political power, to alter or abolish
their form of government.   This view of the subject does not
meet the approbation of this court, nor does it for the purpose
intended, require its elaborate examination.   The language of
the constitution rebuts the presumption of such a meaning or
intention.   That the common law, like the common atmosphere
around every living being, is gladly received by all framers of
a government, is certainly very true ; but that it was adopted
to remain perpetual, unaltered and unalterable, and not to be
tempered to our habits, wants and customs, was never designed
by the wisdom of those who established our fundamental law.
The constitution everywhere allows, and in some places exacts,
the enactment of laws directly contravening the long established
rules of the common law ; and when it enjoins that the rights
of persons shall be "ascertained by law," and protected "by
the common law," it intends to sanction only that species of
legislation which shall, in its assertion in criminal cases, be equal
and general, and not partial and particular.   The common law
was the product of the experience of time and the necessities
of men living under a form of government.   Many of its rules
are now vexatious and have become unnecessary and unfitted to
our occasions, and are properly repealed when they are found
to obstruct the current of justice or the interests of the whole
people.   Many are "unseemly niceties," which Sir Matthew

Hale declares to be "a reproach to the law, a shame to the government, and encouragement to villainy, and a dishonor to God." And our constitution has wisely provided for us the means to obtain what he desired to see, when he adds, "that it were very fit that by some law this overgrown curiosity and nicety were reformed, which is now become the disease of the law, and will, I fear, in time grow mortal, without some timely remedy."

The statute runs against several *mala prohibita,* which were unknown to the common law. The substance of the offense is the selling of vinous or spirituous liquors to a slave without the master's permission, and not necessarily the selling of a particular kind of vinous or spirituous liquor to the slave of a particular individual. Every offense consists of the omission or commission of certain acts, under certain circumstances, and all which are its necessary ingredients, must be stated. It certainly is not material to the proof of spirituous liquors to define its particular kind by name, or to the proof of a person being a slave, to show his master's name. Nor is this a parallel case with those uncertain charges enumerated in being "common thieves, common evil-doers," and such like. It cannot be well said that no one can well know how to defend himself from so general a charge, as it is deemed, when the statute provides it in the permit of the master of the slave to whom the article is sold, nor that he cannot plead the charge in bar or abatement of a subsequent prosecution. The evidence under a plea of *autrefois acquit* or *convict,* is not exclusively of the record, but may be oral to the extent required in the circumstances. And where the law departs in one particular from a previous rule, it necessarily admits a proportionate relaxation in all particulars growing out of that departure.

The judgment of the court below must be reversed, and a new trial granted by the circuit court of Madison county.