**Andrew Lee SAMUEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1064–83.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 20, 1985.

Bill Roberts, Dallas, for appellant.

Henry Wade, Dist. Atty. and Tom Streeter, David Lewis and Steve Miller, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was found guilty by a jury of the offense of forgery. Having also been found to be an habitual offender, appellant was assessed a life sentence. The Dallas Court of Appeals in an unpublished opinion reversed the conviction and remanded the case for a new trial.

The court of appeals ruled that evidence of appellant's silence during a vigilante arrest was admitted in violation of State law, and found this error not to be harmless beyond a reasonable doubt. We granted the State's petition for discretionary review in order to examine the State's contention that the objections voiced by appellant at trial were not sufficient to preserve error on the basis of *State* law.

Late in the afternoon of December 29, 1981 appellant entered the Star Liquor Store at 905 San Jacinto, in downtown Dallas. Appellant "cut in front of" the half a dozen or so customers in the store to present a check to Erick Dickerson, the store owner, to be cashed. The check was made out to appellant, drawn against the account of one "Scottie Adams."[1] When asked if the check was his, and told it would have to be verified, appellant asserted, "it's a good check." On request he presented a temporary driver's license as identification. Dickerson proceeded to call Scottie Adams, and was informed the check was unauthorized. Meanwhile appellant attempted to retrieve the check and license and, failing that, he abandoned them and left the store. Dickerson then cleared his store of customers and pursued appellant with a shotgun.

On direct examination Dickerson testified as to what happened next:

"Q: The next time I saw him was down on the railroad tracks when I caught him.

Q: All right. Now, by 'caught him,' would you tell us what happened in that respect.

A: Well, I ran down the railroad track and he was just about to turn the corner and I pointed the shotgun at him and I told him to stop.

Q: Well, what was his response when you pointed the shotgun at him?

A: He said, 'Don't shoot! It's only a check.'

Q: It's only a check?

A: Yeah.

Q: Okay. Didn't say anything about, you know, why are you doing this, what's going on, anything like that?

A: Well, when I took him back to the front of the store, he asked me, he said, 'Well, why you doing this to me?' And I said, 'Well, you tried to pass a check on me.'

Q: At anytime—did you then hold him for the police there?

1. Adams testified that the check was one of a group of checks which he had last seen in his truck on December 18, presumably of 1981. On that day he had seen appellant in the pool hall outside which his truck was parked. Adams testified the signature on the check was not his. A signature exemplar was submitted to the jury for its comparison with the signature on the check.

A: Yeah, I held him for about twenty minutes until the police arrived.

Q: All right. During the time that you waited for the police, were you continuously guarding him with your—armed and guarding him?

A: Yes, I did.

Q: During that twenty minute time, did he ever protest any innocence or lack of knowledge as to the check?

[APPELLANT'S ATTORNEY]: Judge, I'm going to object to the leading question.

THE COURT: Overruled.

[APPELLANT'S ATTORNEY]: I'll object to statements made after he was under arrest.

THE COURT: Overruled.

[PROSECUTOR]:

Q: You aren't any kind of law enforcement officer, are you?

A: Pardon?

Q: You aren't any kind of law enforcement officer, are you, Mr. Dickerson?

A: No, I'm not.

Q: Again I'll ask you, did the defendant, Andrew Lee Samuel, protest or make any claim of innocence regarding passing you that check?

A: No, he didn't.

Q: To the best of your memory, what statements did he make?

A: I remember asking him, I said, 'Well, who passed that check on me yesterday?' And he said, 'I don't know what you're talking about.'

Q: I don't know what you're talking about? What was his response to—did he tell you where he got this check?

A: No, he didn't.

Q: Okay. Didn't tell you how he came by it, by working or anything like that?

A: No, he didn't.

Q: Simply his first statement was, 'It's only a check?'

A: Uh-huh."

In the course of arguing to the jury on the element of appellant's intent to defraud or harm another, the prosecutor alluded to the foregoing testimony as follows:

"But we know that Erick Dickerson chases him down and holds him for the police. What is the defendant's statement when he's caught? 'It's only a check.' His words. Not my words, not Erick Dickerson's, Andrew Lee Samuel's words, 'It's only a check.' And Erick Dickerson told you for the twenty minutes he held this defendant until the police arrived that this defendant did not utter one syllable protesting his innocence. What he did was acting like a guilty man caught out there. That shows you his intent, no question about it. In fact, his silence there at that scene is one of the most damaging bits of evidence you have before you. But don't you know that if he hadn't done it, he would have told Erick Dickerson that, you know, hey, I didn't do it.

[APPELLANT'S ATTORNEY]: Excuse me, your Honor. I'd like to object to his comment on the defendant's right to remain silent and his comment on his failure to make a statement at the scene, and it is a comment on his failure to remain silent.

THE COURT: Overruled.

[PROSECUTOR]: So there will be no question about what I said, I said his silence at the scene is his biggest indictment of all as to his guilt because don't you know that an innocent man would have been screaming his head off about, you know: why are you doing this to me? I didn't do anything. I earned that check. I worked hard for this."

The court of appeals reversed the conviction on the ground that the trial court erroneously allowed the State to introduce evidence of appellant's post arrest silence. Citing *Hill v. State*, 643 S.W.2d 417 (Tex. App.—Houston [14th] 1982), the court of appeals first held that appellant's detention by shotgun point prior to the arrival of police officers constituted an arrest in that appellant had "been actually placed under restraint ... by [a] ... person arresting without a warrant." Article 15.22, V.A.C.

C.P. See *Hardinge v. State*, 500 S.W.2d 870 (Tex.Cr.App.1973).[2] The court then held that as a matter of State law, evidence of appellant's silence while so restrained was inadmissible as evidence of his guilt. The court concluded that the trial court's error in admitting this evidence and allowing the prosecutor to argue it was not harmless beyond a reasonable doubt.

The State now contends that the appellant's objection at trial was not sufficiently specific to preserve error as a matter of State law;[3] that nothing but Federal constitutional grounds can be considered, and that as a matter of Federal constitutional law, post arrest but pre *Miranda* silence may be considered, not only for purposes of impeachment, see *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), but also for purposes of establishing guilt. For the proposition that a State law issue was not preserved, the State relies on the very case cited by the court of appeals in the first step of its analysis, see *ante, viz: Hill v. State*, supra.

The *Hill* case is inapposite to the State's contention. In *Hill*, the defendant filed two motions to suppress evidence obtained as a result of his warrantless vigilante arrest. One of the motions expressly relied on the exclusionary rule of the Fourth Amendment, which ground was reiterated in the defendant's trial objection. The other was characterized by the court of appeals as a "general catchall motion," specifying no particular legal ground. The court of appeals overruled the defendant's complaint on appeal, finding the Federal exclusionary rule inapplicable to vigilante arrests, which do not constitute a governmental action. The court further noted that, though Art. 38.23, V.A.C.C.P. *would* apply to an illegal vigilante arrest, neither of the defendant's motions invoked this provision as a ground for exclusion. Therefore error was not preserved for appellate rule on this basis, see *Nelson v. State*, 607 S.W.2d 554 (Tex.Cr.App.1980).

Initially we note that this Court expressly overturned this finding of the court of appeals on defendant Hill's petition for discretionary review, handed down by the Court one full year prior to the filing of the State's petition for discretionary review in the instant cause. *Hill v. State*, 641 S.W.2d 543 (Tex.Cr.App.1982).[4] There we reiterated the observation in *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App. 1977) that:

> "A number of exceptions to the general rule that a party cannot complain on appeal to the overruling of a general objection or an imprecise specific objection have been created... *Thus, where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection.*" [Emphasis in original.]

We held that the motion the court of appeals considered a "catchall," while it "may have left something to be desired from the standpoint of clarity," 641 S.W.2d at 544, was nevertheless sufficient to apprise the court of the nature and basis of the defendant's objection.

■ The appellant's objection to Dickerson's testimony may have been terse and almost in the nature of an afterthought. Following his objection on the basis of a leading question,[5] appellant's counsel simply stated, "I'll object to statements made after [appellant] was under arrest." Under similar facts we have observed that:

> "[t]he proper objection ... would be that at the time the question was asked, that the appellant was under arrest and that

---

**2.** The State does not contest, nor do we here decide the propriety of the court of appeals' holding on this initial point.

**3.** It occurs to the writer, however, that such an objection made during trial under State law in a State court presumptively invokes State law rather than Federal, so that it is the latter that must be specified.

**4.** The Court nevertheless concurred in the court of appeals' judgment that admission of the complained of evidence was harmless beyond a reasonable doubt, and affirmed. *Id.*

**5.** An objection which, incidentally, appears to us to have been eminently sustainable.

such a question is in violation of the appellant's rights against self-incrimination and of the confession statute. Art. 38.21, Art. 38.22, V.A.C.C.P."

*Hicks v. State*, 493 S.W.2d 833, 837 (Tex. Cr.App.1973).[6] Still, while appellant's objection did not rise to the model of precision set out in *Hicks*, we think that, coming as it did immediately on the heels of the prosecutor's question which attempted to elicit testimony as to appellant's failure to protest his innocence, it was sufficient to in-

6. In *Hicks*, supra, the objection which the trial court ruled upon was that the prosecutor's question called for hearsay. The defendant's counsel then inquired, "[i]s the court going to permit this prosecutor to ask him about statements made under arrest?" A bench conference was immediately held off the record, after which the prosecutor withdrew his question.

In the instant case the trial court expressly overruled appellant's objection regarding appellant's post arrest silence.

7. Since a very early day it has been held as a kind of corollary to our State confession statute that post arrest silence may not be admitted regardless of whether it occurred before or after the accused received the requisite warnings as to the effect of his speaking out.

In *Gardner v. State*, 34 S.W. 945, 946 (1896) the Court, through Judge Hurt, stated:

"To give silence the effect of an admission, the party charged with it must have been in a position to explain. If the party is under arrest, his silence cannot be used as sustaining the hypothesis of acquiescence thereto. See Whart.Cr.Ev. 680; *U.S. v. Brown*, 4 Cranch, C.C. 508, Fed.Cas. No. 14,660; *Bob v. State*, 32 Ala. 560; *Noonan v. State*, 1 Smedes & M. 562. We deem these authorities sufficient to support the rule that, if the party is under arrest, silence cannot be used to support the hypothesis of consent to statements made in his presence by others. From the bill of exceptions, we infer that the learned judge who tried this case admitted this evidence because appellant had been cautioned. Our Code of Criminal Procedure (article 750) provides that 'the confession shall not be used if at the time it was made the defendant was in jail, or other place of confinement, nor while he is in custody of an officer, unless such confession be made in the voluntary statement of the accused, taken before an examining court in accordance with law, or be made voluntarily after having been first cautioned that it may be used against him,' etc. As above stated, the learned trial judge admitted in evidence the silence of appellant upon the ground that the appellant had been cautioned. *We are of opinion that the fact that*

form the judge of the import of his complaint. *Zillender v. State*, supra.

 Because we find appellant's objection was sufficient to raise a question of State law, we do not reach the State's contention that as a matter of Federal constitutional law post arrest but pre *Miranda* silence on the part of an accused may be admitted as evidence establishing his guilt. It seems clear to us that as a matter of State law such evidence is inadmissible; in fact, the State does not contend otherwise.[7]

*appellant had been cautioned was an additional reason, to being under arrest, for excluding his silence as evidence.* He had been warned that if he said anything it might be used against him. He obeyed the caution, and because he did obey his silence was admitted in evidence against him, and was used as a confession of the truth of the statements made by others. *We are of opinion that, whether cautioned or not, being under arrest, his silence should not have been received in evidence against him.*" [Emphasis supplied.]

See also *Simmons v. State*, 50 Tex.Cr.R. 527, 97 S.W. 1052 (1906). Thus, it appears that originally the issue before the Court was whether silence could be used when it occurred *after* the warning—a question which necessarily *assumes* that post arrest but prewarning silence is patently inadmissible.

Though the confession statute has undergone numerous metamorphoses and recodifications since the *Gardner* case, the corollary has been carried forth into our current Article 38.22, V.A. C.C.P. See *Taylor v. State*, 118 Tex.Cr.R. 340, 42 S.W.2d 426 (1931), wherein the Court observed on motion for rehearing:

"... acts of the accused, and even his silence while under arrest, might be in the nature of confessions, and hence same would be inadmissible, unless coming under some exception to the statutory rule laid down in what is now article 727, C.C.P. [1925]...

\* \* \* \* \* \*

... We think it clearly a violation of the rights of the accused to compel him to admit that, after he was arrested *and while under arrest and unwarned,* he made no explanation of the presence on his premises of certain matters deemed incriminating, and whose presence was explained by him while on the witness stand." [Emphasis supplied.]

See also *Sharp v. State*, 217 S.W.2d 1017 (Tex. Cr.App.1949); *Harrison v. State*, 491 S.W.2d 920 (Tex.Cr.App.1973); *Hicks v. State*, supra.

Whether or not an accused has been cautioned in accordance with Article 38.22, supra, once he has been arrested his right to silence inheres. It would make no sense to hold that,

Nor does the State argue that, contrary to the conclusion of the court of appeals, the trial court's error in admitting Dickerson's testimony regarding appellant's silence was harmless.

Therefore the judgment of the court of appeals is affirmed.

ONION, P.J., and CAMPBELL, J., concur in result.

W.C. DAVIS and McCORMICK, JJ., dissent.

just because he has not been *told* of that right as required by statute and the Federal Constitution, his choice to remain silent, especially in the face of accusation, may be used against him as proof of his guilt in the first instance, *Fletcher v. Wier*, supra, notwithstanding.