IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1418-03






DONALD C. HEIDELBERG, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Johnson, J., filed a dissenting opinion, in which Price and Holcomb, JJ.,
join.


O P I N I O N 


 

 I respectfully dissent. The prosecution made repeated references to appellant's failure to protest
his innocence. While some of those comments arguably referred to appellant's pre-arrest silence, the
majority of them clearly pertained to time periods after appellant had been arrested.

 [State]: And in July of this year did you ask to talk to the detective in the case?

 [Appellant]:Well, I was already incarcerated. So- 

 [State]:Well, did you ever ask anyone- 

* * *

 [State]:Once the defendant was placed under arrest, had he wanted to talk to you, would you
have sat down and spoken with him?

 [Fitzgerald]: Oh, definitely; yes, ma'am.

* * *

 [State]: Do you really believe that he wanted to wait five months from the date of arrest, he saved
all that information to come and tell? Of course not, that's garbage.

 

 Such comments violated appellant's right to silence, which is protected both by the Fifth
Amendment to the United States Constitution and by Article I, § 10 of the Texas Constitution. Doyle v.
Ohio, 426 U.S. 610 (1976), Samuel v. State, 688 S.W.2d 492, 496 (Tex. Crim. App. 1985). I believe
that: 1) the state understood that its questions dealt with post-arrest silence; and 2) appellant's trial
objections were sufficient to preserve error because the specific grounds of the objections were apparent
from the context. Tex. R. App. Proc. art. 33.1(a)(1)(A). As in Coleman v. State, 644 S.W.2d 116 (Tex.
App. - Austin 1982), counsel's objections clearly put the trial court and the prosecutor on notice that the
prosecutor's line of questioning invaded the defendant's constitutional rights, federal and state, to remain
silent.

 In Lankston v. State, 827 S.W.2d 907 (Tex. Crim. App.1992), this Court warned against
requiring litigants to "read some special script" in order to preserve a complaint for appeal: 

 As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal
is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do
so clearly enough for the judge to understand him at a time when the trial court is in a
proper position to do something about it.

Lankston, at 909. Here, defense counsel objected each time the prosecutor attempted to elicit
commentary on appellant's failure to protest his innocence. Each time, the court overruled her objections. 
Eventually, he allowed her a standing objection, suggesting that he indeed understood the grounds for the
objections, but simply chose not to sustain them.

 In Hicks v. State, 493 S.W.2d 833 (Tex. Crim. App. 1973), the Court addressed an imprecise
objection to comment on post-arrest silence, and explained that:

 the proper objection. . . would be that at the time the question was asked, that the
appellant was under arrest and that such a question is in violation of the appellant's rights
against self-incrimination and of the confession statute. 


Hicks, at 837 (internal citations omitted). In this case, each time the prosecutor referred to appellant's
failure, both before and after arrest, to volunteer information to authorities, defense counsel objected on
the basis of the Fifth Amendment. She elaborated on these objections several times by stating that her
client didn't have to talk to anybody. 

 This case is indistinguishable from Samuel v. State, 688 S.W.2d 492 (Tex. Crim. App. 1985),
in which this Court said:

 while appellant's objection did not rise to the model of precision set out in Hicks, we think
that, coming as it did immediately on the heels of the prosecutor's question which
attempted to elicit testimony as to appellant's failure to protest his innocence, it was
sufficient to inform the judge of the import of his complaint. 


Samuel, 688 S.W.2d 492 at 496, citing Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App.
1977). Just as in Samuel, the specific grounds for appellant's objection, which came immediately on the
heels of the prosecutor's questions about appellant's failure to protest his innocence, were apparent from
the context. Tex. R. App. Proc. art. 33.1(a)(1)(A). 

 The court of appeals' reliance on Barnum and Cantu for the general proposition that failure to
specifically object on state grounds will result in a waiver of those grounds is misplaced. The applicable
language in Barnum states simply that "Appellant's objection to the exhibit in the trial court did not include
a timely objection based on his asserted right under the Texas Constitution." Barnum v. State, 7 S.W.3d
782, 794 (Tex. App.- Amarillo, 1999). There is no information in the opinion about what the Barnum trial
objection did include. Therefore, there is no way of determining whether the specific grounds for the
objection were apparent from the context. In this case, the grounds for appellant's objection were
apparent from the context.

 In Cantu, the court of appeals first noted that the appellant had waived his state constitutional and
statutory claims because his objection at trial was based solely on a federal case. Cantu v. State, 994
S.W.2d 721, 733 (Tex. App.- Austin, 1999). The court then reversed on the basis of appellant's federal
claims. Id. at 736. The language about waiver of state claims in Cantu is clearly dicta, and is inapplicable
here. 

 Finally, the footnote in Samuel, which states that "such an objection made during trial under State
law in a State court presumptively invokes State law rather than Federal, so that it is the latter that must be
specified" is instructive in this case. State law cannot offer less protection than federal law, because "the
federal constitutional safeguards applicable to the states represent the minimum standard for state courts,
and the state courts are not limited to those standards in their construction of state's rights." Heitman v.
State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). However, an objection which invokes a right
protected by both state and federal law, even if the state law provides more protection than the federal,
should be sufficient to apprise the trial court of the basis for the objection. 

 Because it was clear from the context that defense counsel's objections referred to the state's
attempts to elicit commentary on appellant's post-arrest silence, I believe the claim was preserved for
appeal. Moreover, I think the trial court erred by failing to sustain those objections. 

 We should not rely Doyle v. Ohio, 426 U.S. 610 (1976) to support a holding that the federal
constitution protects post-arrest silence only after Miranda warnings have been given. Doyle was decided
on the basis of due process, not the Fifth Amendment. Moreover, in Doyle it was presumed that Miranda
warnings had been given, making it unnecessary to address the limits of pre-warning protections:The question in these consolidated cases is whether a state prosecutor may seek to
impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining
the defendant about his failure to have told the story after receiving Miranda warnings at
the time of his arrest. We conclude that use of the defendant's post-arrest silence in this
manner violates due process, and therefore reverse the convictions of both petitioners.


Doyle v. Ohio, 426 U.S. at 611. 

* * *

[Appellants] were stopped within minutes by . . . police acting on radioed instructions from
the narcotics agents. One of those agents, Kenneth Beamer, arrived on the scene
promptly, arrested petitioners, and gave them Miranda warnings.


Id. at 612.


 To say that post-arrest silence is not protected until the subject has been given Miranda warnings
is to gut Miranda and elevate form over substance. The Fifth Amendment is not called into existence by
being read by a police officer. It protects before, during, and after arrest and before, during, and after
recitation of the Miranda warnings. The point of Miranda is that one must know what rights are available
before one can claim those rights. Miranda is merely notice to a subject in custody that he may decline
to speak to police. Reading Miranda warnings makes sure that all subjects know their rights and are given
an opportunity to exercise them. The right to remain silent may be the most important of those rights in
the criminal context.

 At the time of Doyle, Miranda was 14 years old and was described in Doyle as "a prophylactic
means of safeguarding Fifth Amendment rights." Doyle at 2244. Miranda is now 38 years old and has
become ingrained in our legal and popular cultures. We now live in a world saturated by television shows
that portray law enforcement. Miranda warnings are read to television suspects dozens of times each
week. School children can recite them. Yet we now say that, if one is already aware of one's right to
remain silent and chooses to act on that knowledge, one will be penalized for it; any pre-Miranda refusal
or failure to talk to police is fair game at trial. This turns Miranda on its head and opens the door to
gamesmanship. Police do not have to give warnings unless the subject is questioned. If they do not initiate
questioning of the subject, then the subject's failure to talk to police or failure to ask to talk to police can
be used as evidence of guilt at trial, even if, as here, the subject may be unaware of being under suspicion
or having pending charges. Surely, our constitutional guaranties, under either or both federal and state
provisions, are not so weak and narrow to permit such violation.

 In this case, because appellant did not seek out police to talk with them, an act no citizen is required
to do, he has been penalized by the discussion in front of the jury of that "failure." This is a violation of his
right to remain silent even more egregious than to penalize him for explicitly invoking that right when
confronted by police.

 I dissent.


Filed: September 15, 2004

En Banc

Publish