Opinion issued November 22, 2006




 



     





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00158-CR




PAUL EDWARD WYBORNY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1013939




O P I N I O N
          A jury found appellant, Paul Edward Wyborny, guilty of the murder of Patrick
Axtell and assessed punishment at 40 years’ confinement. In two points of error,
appellant contends that the trial court erred in overruling his objection to the
prosecutor commenting on his post-arrest silence in violation of article I, section 10 
of the Texas Constitution and violated his right to remain silent under the Fifth
Amendment to the United States Constitution. We reverse and remand.
Background
            On June 24, 2004, appellant and his girlfriend, Sabrina, went to a bar in Harris
County, Texas called “Uncle Albert’s.” While playing a game of pool, the two came
into contact with Rene Rodriguez. All three were served alcohol by Jennifer Bissell. 
Appellant, Rodriguez, and Bissell testified that a dispute arose between appellant and
Patrick Axtell, another patron in the bar. They testified that appellant struck Axtell
with his hand. The witnesses disagreed, however, whether Axtell initiated the fight
at the bar, how many times appellant struck Axtell, and whether appellant was acting
in self-defense when he struck Axtell. 
          Appellant testified that he was playing pool when he accidentally bumped
Axtell with the pool cue while Axtell was walking behind him. Axtell called him a
“son of a bitch” and walked to the other side of the bar. The two men did not make
any further contact with one another until appellant and Sabrina were leaving the bar
for the evening. 
          Appellant testified that Sabrina was paying their bill when he started to walk
toward the door. As appellant approached him, Axtell “flipped off” appellant. 
Appellant testified that he looked behind him to see if the obscene gesture was
directed toward someone else. He turned back around, and Axtell said “I’ll break
your face” and “took a swing” at appellant’s nose. Appellant testified that Axtell
then said “I’ve got something for you” and was reaching into his back pocket when
appellant hit him in the face, knocking him to the floor. Appellant, thinking that
Axtell had “a knife or small pistol or something,” straddled Axtell with one knee on
his arm that was reaching in the pocket and his other knee on Axtell’s chest. 
Appellant testified that Axtell then hit him in the ribs. Appellant responded with
three quick hits to Axtell’s face. Appellant said that he “decided [that it] wasn’t a
good place to be on top of him because [he] was still vulnerable if [Axtell] had a
weapon,” so he got off of Axtell and grabbed a nearby pool cue “for [his] defense
only.” Appellant was told to leave the bar. He learned the next day that Axtell later
died from his injuries.
          The State called two eyewitnesses to the stand at trial, Rene Rodriguez and the
bartender, Jennifer Bissell. Both Rodriguez and Bissell corroborated much of
appellant’s testimony. However, neither testified that they saw Axtell strike appellant
first. Bissell testified to seeing appellant strike Axtell twice before he fell to the
ground. Both witnesses agreed that appellant struck Axtell at least three times after
he hit the floor. 
          After the fight, Rodriguez and Bissell told appellant to leave the bar. Later that
evening, an acquaintance of appellant was called to help with a physical struggle
between appellant and Sabrina at their home. The acquaintance called 911 to report
the incident. The police responded, but appellant left the home before they arrived. 
At the request of the officers who responded to the 911 call, Sabrina returned to
Uncle Albert’s and informed the police of appellant’s identity. The following
morning, the investigating detectives went to breakfast at the International House of
Pancakes. While there, they coincidentally saw appellant and Sabrina eating
breakfast, and they arrested him at the restaurant.
          At trial, appellant took the stand to testify in his own defense. On direct
examination, he explained that he acted in self-defense when he struck Axtell. On
cross-examination by the State, the prosecutor questioned appellant regarding his
post-arrest silence in an attempt to impeach his claim of self-defense. 
Cross-Examination Regarding Post-Arrest Silence
          In two points of error, appellant contends that the trial court erred in overruling
his objection to the prosecutor’s comments regarding his post-arrest silence in
violation of Article I, section 10 of the Texas Constitution and the Fifth Amendment
to the United States Constitution.
          Appellant complains of the following cross-examination by the State’s
attorney:
Q:When you got there to the IHOP, was Sabrina there?
 
A:Yes, ma’am.
 
Q:While you were there, did you come in contact with the police?
 
A:Yes, ma’am, I did.
 
Q:Did the police take you into custody?
 
A:Yes, they did.
 
Q:At that time when the police took you into custody, did you tell
them, Hey, guys, I was acting in self-defense?
 
A:(Shakes head negatively.)
 
[DEFENSE COUNSEL]:Objection.
 
THE COURT: Please answer yes or no.
 
[DEFENSE COUNSEL]:Objection. He’s got a right not
to respond.
 
THE COURT: Overruled.



 
Q:When the police initially came up to you as you were there and
they are taking you into custody, did you say anything to them
about, Hey, guys, this is just a misunderstanding; I acted in self-defense? Yes or no?
 
A:No, ma’am.

Preservation
          Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides, in relevant part,
that for a complaint to be presented on appeal, a timely request, objection, or motion
must have been made to the trial court, which “stated the grounds for the ruling that
the complaining party sought from the trial court with sufficient specificity to make
the trial court aware of the complaint, unless the specific grounds were apparent from
the context.” Tex. R. App. P. 33.1(a)(1)(A) (emphasis added). Texas Rule of
Evidence 103(a)(1) contains similar guidelines, providing that “a timely objection or
motion to strike [must appear] on the record, stating the specific ground of objection,
if the specific ground was not apparent from the context.” Tex. R. Evid. 103(a)(1)
(emphasis added). Additionally, it is well settled that the legal basis of a complaint
raised on appeal cannot vary from that raised at trial. See Heidelberg v. State, 144
S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that objection that “Fifth
Amendment rights were violated” was not sufficient to preserve complaint on appeal
that rights to post-arrest silence under Texas Constitution had been violated). In
evaluating whether an imprecise objection is sufficient to preserve error, “one must
look to the context of each case in order to see if the ground of the objection was
apparent.” Id. at 538. 
          Here, the State concedes that its cross-examination “clearly implicated”
appellant’s post-arrest statements, but it relies on Heidelberg to support its argument
that appellant’s objections at trial were not sufficient to preserve error. We disagree.
          Article I, section 10 of the Texas Constitution protects a defendant’s post-arrest
silence even before his Miranda


 warnings have been administered. Id. at 537. In
contrast, the Fifth Amendment of the Federal Constitution protects post-arrest silence
made only after a defendant’s Miranda warnings have been given. Id. Thus, a
defendant receives more protections under the Texas Constitution than under the
Federal Constitution. 
          In Heidelberg, the Court of Criminal Appeals determined that Heidelberg’s
objections that referred to the “Fifth Amendment” were insufficient to preserve error
under the Texas Constitution. See id. The court explained that the objections by
Heidelberg specifically referred to Heidelberg’s right to remain silent under the “Fifth
Amendment” only and that “there is no indication in the record that the judge
understood that Appellant was trying to invoke a protection different from the Fifth
Amendment protection which he was citing.” Id. at 538. Further, the Heidelberg
court noted that “many of the questions asked to Appellant in the case at hand were
not time-specific, i.e. one could not tell from the State’s questions whether the State
was asking about pre-arrest silence, post-arrest pre-Miranda silence, or post-arrest
post-Miranda silence.” Id. at 539. The State’s questions and comments about
Heidelberg’s silence were not time specific because they included a period of time
when Heidelberg was not in custody or under arrest, and a period of time after
Heidelberg was arrested. Id. at 536–37.


 The Court of Criminal Appeals held that
Heidelberg’s objection to the admission of evidence was insufficient to preserve error
“[d]ue to: 1) the lack of time-specific questions by the prosecutor, 2) counsel’s failure
to cite to the state constitution or even specify that he was objecting to post-arrest
silence, and 3) the lack of commentary by the judge in making his rulings on the
objections.” Id. at 542–43. 
          In Cleveland v. State, we cited to Heidelberg, and held that the objection on the
grounds that the defendant has a “right to remain silent” was insufficient to preserve
error because Cleveland failed to specifically refer to the Texas Constitution or the
Sanchez


 case. 177 S.W.3d 374, 384 (Tex. App.—Houston [1st Dist.] 2005, pet.
ref’d). Cleveland complained of the State’s closing argument that asserted that he
talked to his mother, sister, employer, 911 operator, and police officers about the
stabbing and never mentioned to any of them his claim of self-defense. Id. at 383. 
We noted in Cleveland that, “Appellant acknowledged that, before peace officers
responded to the stabbing at his house, he spoke on the telephone to family members,
his employer, and to the 911 operator, whom he told that he had stabbed his wife, but
without mentioning self-defense.” Id. at 379 (emphasis added). The facts in
Cleveland further showed that, when the first deputy arrived at the scene of the
murder, Cleveland approached that deputy and told him that he stabbed the victim. 
Id. at 378–79. That deputy arrested Cleveland and did not obtain any other
statements from him. Id. at 379. A second deputy read Cleveland his rights shortly
after Cleveland was arrested. Id. The State’s comments about Cleveland’s silence,
therefore, concerned his silence before his arrest, his silence after his arrest but before
Miranda rights were read, and his silence after his arrest and after his Miranda rights
were read. See id. Thus, like Heidelberg, it was not apparent from the context of the
circumstances and the objection that Cleveland’s objection that he has a “right to
remain silent” was a complaint under the Texas Constitution, because the State’s
comment concerned Cleveland’s pre-arrest silence, post-arrest pre-Miranda silence,
and post-arrest post-Miranda silence. See Heidelberg, 144 S.W.3d at 539. Also like
Heidelberg, Cleveland did not cite to the state constitution or even specify that he was
objecting to post-arrest silence. Cleveland, 177 S.W.3d at 384. We concluded in
Cleveland that “the specific grounds of appellant’s complaint were not apparent from
the context.” Id. In Cleveland, we held that the record was insufficient to show that
“the trial court was aware of the complaint” based only on the general objection that
he had a “right to remain silent.” Id. 
          Here, appellant’s imprecise objection that he had a “right not to respond” can 
be sufficient to preserve error depending on whether the ground for the objection is
apparent based on the context of the case. See Heidelberg, 144 S.W.3d at 538. In
this case, unlike in Heidelberg and in Cleveland, the State’s questions specifically
referenced only one period of time—when appellant was in police custody and before
Miranda rights were read to him. The context of the questions, therefore, could only
implicate appellant’s post-arrest, pre-Miranda right to remain silent, which is
protected by the Texas Constitution only. See id. at 537. Thus, despite the failure of
the objection to specifically reference the Texas Constitution, given the context of the
State’s question, the objection was specific enough to have put the trial court on
notice of his objection. See id.
          This case is analogous to Samuel v. State, 688 S.W.2d 492 (Tex. Crim. App.
1985). In Samuel, the defendant was found guilty of forgery. Id. at 493. On direct
examination by the State, the prosecutor asked the store clerk whether the defendant
ever professed his innocence during a 20-minute time period in which the store owner
was holding him until the police arrived.


 Id. at 494. The defense attorney objected
“to statements made after he was under arrest,” and the trial court overruled the
objection. Id. at 494. Later, in jury argument, the prosecutor made the following
comments:
What is the defendant’s statement when he’s caught [by the store clerk]?
“It’s only a check.” His words. . . . And [the store clerk] told you that
for the twenty minutes he held this defendant until the police arrived that
this defendant did not utter one syllable protesting his innocence. . . . In
fact, his silence there at the scene is one of the most damaging bits of
evidence you have before you.

Id. The defense attorney again objected to the prosecutor’s “comment on the
defendant’s right to remain silent and his comment on his failure to make a statement
at the scene.” Id. On appeal, the State claimed that the defendant’s objection at trial
only preserved error under federal constitutional grounds, under which there would
be no protection for post-arrest, pre-Miranda silence, not state constitutional grounds. 
Id. at 495. The Court of Criminal Appeals reasoned that, “where the correct ground
of exclusion was obvious to the judge and opposing counsel, no waiver results from
a general and imprecise objection,” and that, even though the objection was
somewhat of a “catchall,” it was clear enough to put the court on notice as to the
nature of the defendant’s objection. Id. at 495–96.
          Here, as in Samuel, we hold that appellant’s objection was clear enough to put
the court on notice as to the nature of his objection, and therefore, to preserve error
on appeal. 
Error
          We hold that it was error for the trial court to overrule appellant’s objection
under the Texas Constitution. 
          Texas Constitution
          In Texas, post-arrest, pre-Miranda silence may not be used against an accused
at trial. See Heidelberg, 144 S.W.3d at 537. The use of post-arrest silence has been
held to violate an accused’s right to be free from self-incrimination under article I,
section 10 of the Texas Constitution. Sanchez, 707 S.W.2d at 582. As a general rule,
when an accused voluntarily takes the stand before a jury, he is subject to the same
rules as any other witness in that he may be impeached, contradicted, and cross-examined as to new matters. Feldman v. State, 71 S.W.3d 738, 755 (Tex. Crim. App.
2002). Where there are overriding constitutional or statutory prohibitions, however,
the accused may not be treated as just another witness. Alexander v. State, 740
S.W.2d 749, 763 (Tex. Crim. App. 1987). One of the limitations on the prosecution’s
cross-examination of an accused is the constitutional privilege against self-incrimination. Sanchez, 707 S.W.2d at 582. The use of a defendant’s post-arrest
silence is akin to a comment on his failure to testify at trial because it attempts to raise
an inference of guilt arising from the invocation of a constitutional right. Dinkins v.
State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). 
          Here, the State used appellant’s post-arrest silence against him to discredit and
impeach him on cross-examination by demonstrating to the jury that he did not
express his defensive theory of self-defense after his arrest. Appellant’s counsel
timely objected on this basis and preserved error. Tex. R. App. P. 33.1. We hold that
it was error for the trial court to overrule appellant’s objection. This error resulted
in a violation of appellant’s right to be free from self-incrimination under article I,
section 10 of the Texas Constitution. Tex. Const. art. I, § 10.  
          United States Constitution
          Having held that it was error for the trial court to overrule appellant’s objection
under the Texas Constitution, we need not determine whether it was error under the
United State’s Constitution, as well.
Harm Analysis
          We must now determine whether the trial court’s error in overruling appellant’s
objection to the State’s cross-examination on his post-arrest silence constituted
harmful error. 
          Because appellant’s objection concerned his right to remain silent under article
I section 10 of the Texas Constitution, Texas Rule of Appellate Procedure 44.2(a)
applies. Texas Rule of Appellate Procedure 44.2(a) requires reversal in constitutional
error cases “unless the court determines beyond a reasonable doubt that the error did
not contribute to the conviction or punishment.” Tex. R. App. P. 44.2(a). In
examining the record to assess harm, we consider: (1) the source and nature of the
error, (2) the extent to which the State emphasized it, (3) the weight a juror would
probably place on it, and (4) whether declaring the error harmless would encourage
the State to repeat it with impunity. See Dinkins, 894 S.W.2d at 356. 
          In this case, the State was the source of the error, and it conceded that its cross-examination “clearly implicated” appellant’s post-arrest silence. The State asked the
same question twice: once before appellant’s counsel objected and again after the
objection was overruled. There was no other mention of appellant’s post-arrest
silence, so this evidence was not strongly emphasized by the State. However, the trial
court overruled appellant’s objection and did not instruct the jury to disregard the
State’s comment. This could have left the jury with the impression that, if appellant
attacked Axtell out of fear for his life, he would have said something to the officers
at the time of arrest. See Bhakta v. State, 981 S.W.2d 293, 296 (Tex. App.—San
Antonio 1998, pet. ref’d) (by overruling objection, State’s comment left jury with
impression that it was acceptable to draw inference of guilt from appellant’s silence). 
          It is difficult to determine what weight a juror would place on an error like the
one in this case. The State argues that there is no possibility that the error impacted
the jury’s verdict given the overwhelming evidence of appellant’s guilt. However,
in a case like this where there are inconsistencies in the testimony of the two
eyewitnesses and the appellant, credibility was a crucial issue for the jury. Further,
self-defense was the only defensive theory appellant presented. 
          The sole contested issue at trial was appellant’s intent. Appellant testified that
he was playing pool when he accidentally bumped Axtell with the pool cue while
Axtell was walking behind him. Axtell called him a “son of a bitch” and walked to
the other side of the bar. The two men did not make any further contact with one
another until appellant and Sabrina were leaving the bar for the evening. 
          Appellant testified that Sabrina was paying their bill when appellant started to
walk toward the door. As appellant approached him, Axtell “flipped off” appellant. 
Appellant testified that he looked behind him to see if the obscene gesture was
directed toward someone else. He turned back around, and Axtell said “I’ll break
your face” and “took a swing” at appellant’s nose. Appellant testified that Axtell
then said “I’ve got something for you” and was reaching into his back pocket when
appellant hit him in the face, knocking him to the floor. Appellant, thinking that
Axtell had “a knife or small pistol or something,” straddled Axtell with one knee on
his arm that was reaching in the pocket and his other knee on Axtell’s chest. 
Appellant testified that Axtell then hit him in the ribs. Appellant responded with
three quick hits to Axtell’s face. The situation “wasn’t under control.” Appellant
“was still getting hit at the time.” Appellant said that he “decided [that it] wasn’t a
good place to be on top of him because [he] was still vulnerable if [Axtell] had a
weapon,” so he got off of Axtell and grabbed a nearby pool cue “for [his] defense
only.” Appellant explained that it was not his intent to kill or even cause serious
bodily injury to Axtell. His intent was to stop Axtell from “injuring me.” 
          Rodriguez confirmed that appellant struck Axtell once while both men were
still standing and three more times after Axtell hit the floor. At this point, Rodriguez
noticed that Axtell “was out” and “seemed defenseless,” so he intervened and pushed
appellant off of Axtell. He testified that, as he was pushing him back, appellant
grabbed the pool cue but confirmed that appellant did not strike Axtell with it. 
Rodriguez testified that appellant appeared ready to hit Axtell with the pool cue and
probably would have if he had not stepped in. He testified that he did not see Axtell
make any obscene gesture or threats toward appellant but did see the two
“acknowledge” each other prior to the fight. Rodriguez said that he did not see Axtell
take a swing at appellant and did not see him raise his hands to defend himself against
appellant’s first punch. Appellant testified that Rodriguez created the whole story
about pulling him off of Axtell so that Rodriguez’s wife, who was not at the bar,
would think he was a hero. 
          Bissell testified that she heard a brief verbal exchange between appellant and
Axtell prior to the fight. She said that she heard appellant say “Are you fucking
talking to me?” and heard Axtell respond “If I was talking to you I would be in your
fucking face.” Bissell testified to seeing appellant hit Axtell twice before he fell to
the ground and saw appellant hit Axtell “three or four more times” after that. She
further testified on cross-examination that, after Axtell hit the floor, she could not see
if he was moving or not and that she saw appellant with the pool cue but did not see
the pool cue connect with Axtell. Appellant testified that Bissell asked him to leave
the bar after the fight. Rodriguez admitted to asking appellant and his girlfriend to
leave.  
          It was undisputed that appellant hit Axtell with his fists and caused Axtell’s
death. Appellant’s sole defense was that he was acting in self-defense. Which
witnesses the jury believed regarding who initiated the disagreement at the bar, how
many times appellant struck Axtell, and whether he was acting in self-defense
depended upon the jury’s resolution of the witnesses’s testimony. With credibility
being such a critical issue, the State’s comment seeking to impeach appellant’s
credibility, and the suggested inference of guilt from his silence, could have been
given decisive weight by the jury. To hold otherwise might encourage the State to
repeat this error. See Dinkins, 894 S.W.2d at 356.
          Given the importance of credibility in the jury’s deliberations, we are unable
to conclude beyond a reasonable doubt that the error did not contribute to appellant’s
conviction. Accordingly, we sustain appellant’s first point of error.
 
 
 
 
 
 
 
Conclusion
          We reverse the judgment of the trial court. The cause is remanded to the trial
court for a new trial.

                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.

Justice Keyes, dissenting.

Publish. Tex. R. App. P. 47.2(b).