FILED
*December 22, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-15-00340-CV
8334072
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/22/2015 12:00:50 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00340-CV**

IN THE THIRD COURT OF APPEALS
SITTING IN AUSTIN, TEXAS

**CHRISTOPHER JAROSZEWICZ,**
APPELLANT

**V.**

**TEXAS DEPARTMENT OF PUBLIC SAFETY,**
APPELLEE

APPEALED FROM COUNTY COURT AT LAW NO. 2
TRAVIS COUNTY, TEXAS

**APPELLEE'S BRIEF**

KEVIN M. GIVENS
Supervising Attorney,
ALR Appellate Section
SBN 00796633
P.O. Box 15327
Austin, Texas 78761-5327
Tel:   (512) 424-5193
Fax:   (512) 424-5221
Kevin.Givens@dps.texas.gov

ATTORNEY FOR APPELLANT
TEXAS DEP'T OF PUB. SAFETY

ORAL ARGUMENT WAIVED

## IDENTITY OF PARTIES AND COUNSEL

Appellee certifies that the following is a supplement to Appellant's list of the parties, attorneys, and other persons who have any interest in the outcome of this lawsuit.

**COUNSEL FOR APPELLEE:**

Derek Burkhalter
SBN 24059513
Texas Dep't of Public Safety
P.O. Box 15327
Austin, Texas 78761-5327
Tel:   (512) 424-5193
Fax:   (512) 424-5221
Derek.Burkhalter@dps.texas.gov

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................. ii

TABLE OF CONTENTS.................................................................. iii

INDEX OF AUTHORITIES ............................................................. vi

APPELLEE'S BRIEF .................................................................. 1

STATEMENT OF THE CASE ......................................................... 2

WAIVER OF ORAL ARGUMENT.................................................... 2

REPLY POINTS PRESENTED ........................................................ 3

STATEMENT OF FACTS ............................................................. 4

SUMMARY OF THE ARGUMENT ................................................... 5

STANDARD OF REVIEW ............................................................. 6

REPLY POINT ONE ................................................................... 8

Jaroszewicz's objection to the evidence of speeding was too general to preserve error. It did not inform the ALJ of the basis of the objection, and the basis of the objection was not clear from the context. The ALJ did not err by overruling the general objection.

ARGUMENT AND AUTHORITY .......................................................... 8

I.   Texas's Rules of Procedure Require a Specific and
Timely Objection ..................................................................... 8

    A.   Jaroszewicz's Objection Was Not Specific and Not
    Made Clear by Its Context.................................................... 8

    B.   Jaroszewicz Did Not Explain the Basis of His
    Objection Until Closing Arguments....................................... 10

iii

C. The Cases Cited by Jaroszewicz Are Not Applicable to the Case at Bar................................................................. 11

II. A General Objection That the Predicate Has Not Been Laid Does Not Preserve Error .................................................. 14

A. Objections That Merely Cite Rule 702 or Kelly Are General Objections That Do Not Preserve Error. .............................. 14

B. Jaroszewicz's General Objection Encompassed Numerous Potential Bases for an Objection ...................................... 18

C. Jaroszewicz's Argument on Appeal Is Different Than His Objection at Trial................................................................. 20

REPLY POINT TWO ......................................................................... 24

Officer Martin made a visual estimation of Jaroszewicz's speed and confirmed that estimation through the use of radar equipment. The courts have repeatedly held such evidence—either independently, or considered together—to be sufficient to establish reasonable suspicion for a stop. The ALJ did not err in finding there was reasonable suspicion to stop Jaroszewicz.

ARGUMENT AND AUTHORITY .......................................................... 24

I. The ALJ Did Not Err by Overruling Jaroszewicz's Objection to the Radar Evidence ............................................. 24

A. Ochoa Does Not Govern the Outcome of This Case.................. 25

B. Maysonet Does Not Govern the Outcome of This Case. ........................................................................ 28

C. Chavez Governs the Outcome of This Case............................. 31

II. Officer Martin's Lay Opinion Was Sufficient to Establish Reasonable Suspicion .............................................. 34

A. An officer's opinion that the driver is exceeding the speed limit is sufficient for reasonable suspicion without confirmation by radar. ....................................................... 35

B. Lay Witnesses May Testify About the Speed of Vehicles. ....................................................................... 43

CONCLUSION ................................................................. 47

PRAYER .......................................................................... 49

CERTIFICATE OF COMPLIANCE ................................ 50

CERTIFICATE OF SERVICE ......................................... 50

# INDEX OF AUTHORITIES

**CASES**

*Amores v. State*,
816 S.W.2d 407 (Tex. Crim. App. 1991) ........................................... 36

*Arizpe v. State*,
308 S.W.3d 89 (Tex. App.—San Antonio 2010, no pet.) .................. 28

*Birchfield v. Texarkana Mem'l Hosp.*,
747 S.W.2d 361 (Tex. 1987) ............................................................ 19

*Bland v. Tex. Dep't of Pub. Safety*,
No. 14-12-01057-CV, 2013 WL 3868447
(Tex. App.—Houston [14th Dist.] July 23, 2013, pet. denied)
(mem. op.) ........................................................................................ 26

*Chavez v. State*,
No. 08-05-00371-CR, 2006 WL 2516974
(Tex. App.—El Paso Aug. 31, 2006, pet. ref'd)
(not designated for publication) ...................................... 31, 32, 33, 34

*City of El Paso v. Pub. Util. Comm'n of Tex.*,
883 S.W.2d 179 (Tex. 1994) .............................................................. 6

*Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*,
136 S.W.3d 227 (Tex. 2004) ............................................................ 19

*Crook v. State*,
No. 14-12-00960-CR, 2013 WL 6164058
(Tex. App.—Houston [14th Dist.] Nov. 21, 2013, no pet.)
(mem. op., not designated for publication) ....................................... 41

*Curran v. State*,
No. 07-10-0078-CR, 2011 WL 446191
(Tex. App.—Amarillo Feb. 8, 2011, pet. ref'd)
(mem. op., not designated for publication) ....................................... 41

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ................ 16

*Davis v. State*,
No. 01-96-01039-CR, 1998 WL 85262
(Tex. App.—Houston [1st Dist.] Feb. 19, 1998, no pet.)
(not designated for publication) ........................................................ 45

*Delane v. State*,
369 S.W.3d 412 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).. 16

*Denham v. State*,
574 S.W.2d 129 (Tex. Crim. App. 1978)............................................ 44

*Dillard v. State*,
550 S.W.2d 45 (Tex. Crim. App. 1977)........................................ 37, 40

*Ex parte Menchaca*,
854 S.W.2d 128 (Tex. Crim. App. 1993)............................................ 13

*Fernandez v. State*,
915 S.W.2d 572 (Tex. App.—San Antonio 1996, no pet.)................ 27

*Fletcher v. State*,
39 S.W.3d 274 (Tex. App.—Texarkana 2001, no pet.) .................... 16

*Flores v. State*,
No. 05-93-00437-CR, 1994 WL 236410
(Tex. App.—Dallas May 31, 1994, no pet.)
(not designated for publication) ........................................................ 45

*Ford v. State*,
158 S.W.3d 488 (Tex. Crim. App. 2005)............................................ 19

*Gano v. State*,
466 S.W.2d 730 (Tex. Crim. App. 1971)............................................ 18

*Gaytan v. State*,
331 S.W.3d 218 (Tex. App.—Austin 2011, pet. ref'd)..................... 11

*Gregory v. State*,
56 S.W.3d 164 (Tex. App.—Houston
[14th Dist.] 2001, pet. dism'd) .......................................................... 16

*Guevara v. State*,
152 S.W.3d 45 (Tex. Crim. App. 2004)............................................. 36

*Gutierrez v. State*,
   327 S.W.3d 257 (Tex. App.—San Antonio 2010, no pet.) ................ 27

*Gutierrez v. State*,
   85 S.W.3d 446 (Tex. App.—Austin 2002, pet. ref'd) ........................ 23

*Guzman v. State*,
   955 S.W.2d 85 (Tex. Crim. App. 1997) ............................................. 7

*Hartman v. State*,
   946 S.W.2d 60 (Tex. Crim. App. 1997) ........................................... 16

*Heredia v. State*,
   No. 08-06-00011-CR, 2007 WL 1704952
   (Tex. App.—El Paso June 14, 2007, no pet.)
   (not designated for publication) ...................................... 27, 39, 40, 41

*Hill v. State*,
   641 S.W.2d 543 (Tex. Crim. App. 1982) ........................................... 11

*Icke v. State*,
   36 S.W.3d 913 (Tex. App.—Houston
   [1st Dist.] 2001, pet. ref'd) .............................................. 26, 27, 37, 39

*Jasso v. State*,
   112 S.W.3d 805 (Tex. App.—Houston
   [14th Dist.] 2003, pet. ref'd) ............................................................ 11

*Jessop v. State*,
   368 S.W.3d 653 (Tex. App.—Austin 2012, no pet.) ......................... 17

*Kelly v. State*,
   721 S.W.2d 586 (Tex. App.—Houston [1st Dist.] 1986, no pet.) ..... 26

*Kelly v. State*,
   824 S.W.2d 568 (Tex. Crim. App. 1992) .............................. 14, 16, 32

*King v. State*,
   129 S.W.3d 680 (Tex. App.—Waco 2004, pet. ref'd) ....................... 44

*Littlefield v. State*,
   167 Tex. Crim. 443, 321 S.W.2d 79 (1959) ........................... 44, 45, 46

*Lozada-Mendoza v. State*,
    951 S.W.2d 39 (Tex. App.—Corpus Christi 1997, no pet.)............... 46

*Madden v. State*,
    242 S.W.3d 504 (Tex. Crim. App. 2007)........................................... 26

*Maki v. State*,
    No. 05-07-00486-CR, 2008 WL 2688535
    (Tex. App.—Dallas July 10, 2008, pet. ref'd)
    (mem. op., not designated for publication) ....................................... 18

*Markle v. State*,
    No. 01-13-01028-CR, 2015 WL 505194
    (Tex. App.—Houston [1st Dist.] Feb. 5, 2015, pet. ref'd)
    (mem. op., not designated for publication) ....................................... 37

*Masquelette v. State*,
    579 S.W.2d 478 (Tex. Crim. App. 1979)..................................... 29, 30

*Mays v. State*,
    563 S.W.2d 260 (Tex. Crim. App. 1978).......................................... 20

*Maysonet v. State*,
    91 S.W.3d 365 (Tex. App.—Texarkana
    2002, pet. ref'd) .............................................................. 18, 25, 29, 30

*McKinney v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    772 S.W.2d 72 (Tex. 1989) ............................................................. 10

*Merrell Dow Pharm., Inc. v. Havner*,
    953 S.W.2d 706 (Tex. 1997) ........................................................... 36

*Mills v. State*,
    99 S.W.3d 200 (Tex. App.—Fort Worth 2002, pet. ref'd) .......... 15, 17

*Mireles v. Tex. Dep't of Pub. Safety*,
    9 S.W.3d 128 (Tex. 1999) ................................................................. 6

*Moore v. State*,
    109 S.W.3d 537 (Tex. App.—Tyler 2001, pet. ref'd)....................... 16

*Myles v. State*,
    946 S.W.2d 630 (Tex. App.—Houston [14th Dist.] 1997, no pet.)... 36

*Ochoa v. State*,
   994 S.W.2d 283 (Tex. App.—El Paso 1999, no pet.) ...... 25, 26, 30, 38

*Parroccini v. State*,
   90 Tex. Crim. 320, 234 S.W. 671 (1921) .............................. 44, 45, 46

*Perales v. State*,
   117 S.W.3d 434 (Tex. App.—Corpus Christi 2003, pet. ref'd) ......... 17

*Puente v. A.S.I. Signs*,
   821 S.W.2d 400 (Tex. App.—Corpus Christi 1991, writ denied) ..... 20

*Richey v. Brookshire Grocery Co.*,
   952 S.W.2d 515 (Tex. 1997) ..................................................................... 7

*Samuel v. State*,
   688 S.W.2d 492 (Tex. Crim. App. 1985) .................................... 11, 12

*Scherl v. State*,
   7 S.W.3d 650 (Tex. App.—Texarkana 1999, pet. ref'd) ........ 15, 16, 17

*Schronk v. City of Burleson*,
   387 S.W.3d 692 (Tex. App.—Waco 2009, pet. denied) .................... 20

*Shaw v. State*,
   329 S.W.3d 645 (Tex. App.—Houston
   [14th Dist.] 2010, pet. ref'd) ............................................................ 17

*Simpson v. State*,
   No. 07-07-0310-CR, 2008 WL 4367960
   (Tex. App.—Amarillo Sept. 25, 2008, no pet.)
   (mem. op., not designated for publication) ........................... 37, 40, 43

*Smith v. State*,
   No. 05-96-00765-CR, 1998 WL 46736
   (Tex. App.—Dallas Feb. 6, 1998, no pet.)
   (not designated for publication) ....................................................... 39

*State v. $217,590.00 in U.S. Currency*,
   18 S.W.3d 631 (Tex. 2000) ................................................................. 7

*State v. Fudge*,
   42 S.W.3d 226 (Tex. App.—Austin 2001, no pet.) ........................... 28

*State v. Kerwick*,
   393 S.W.3d 270 (Tex. Crim. App. 2013) .............................................. 7

*Stevenson v. State*,
   920 S.W.2d 342 (Tex. App.—Dallas 1996, no pet.) .......................... 18

*Tex. Dep't of Pub. Safety v. Botsford*,
   No. 03-13-00602-CV, 2014 WL 902567
   (Tex. App.—Austin Mar. 7, 2014, no pet.) (mem. op.) ..................... 46

*Tex. Dep't of Pub. Safety v. Cantu*,
   944 S.W.2d 493 (Tex. App.—Houston [14th Dist.] 1997, no writ) .... 7

*Tex. Dep't of Pub. Safety v. Duggin*,
   962 S.W.2d 76 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ....... 29

*Tex. Dep't of Pub. Safety v. Narvaez*,
   No. 13-14-00114-CV, 2014 WL 5410758
   (Tex. App.—Corpus Christi Oct. 23, 2014, no pet.) (mem. op.) . 27, 42

*Tex. Dep't of Pub. Safety v. Nielsen*,
   102 S.W.3d 313 (Tex. App.—Beaumont 2003, no pet.).............. 26, 41

*Tex. Dep't of Pub. Safety v. Pucek*,
   22 S.W.3d 63 (Tex. App.—Corpus Christi 2000, no pet.).................. 6

*Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*,
   665 S.W.2d 446 (Tex. 1984) ............................................................. 6

*Thomas v. State*,
   No. 08-05-00247-CR, 2007 WL 1404425
   (Tex. App.—El Paso May 10, 2007, pet. ref'd, untimely filed)
   (not designated for publication) ........................................... 27, 37, 40

*Warren v. State*,
   No. 05-08-01431-CR, 2009 WL 3467013
   (Tex. App.—Dallas Oct. 29, 2009, no pet.)
   (not designated for publication) ....................................................... 37

*Williams v. State*,
   191 S.W.3d 242 (Tex. App.—Austin 2006, no pet.) ......................... 23

*Zillender v. State,*
557 S.W.2d 515 (Tex. Crim. App. 1977) ............................................. 13

**STATUTES**

Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1,
1965 Tex. Gen. Laws 317, 471,
*repealed by* Act of May 27, 1985, 69th Leg., R.S. ch. 685, § 9(b),
1985 Tex. Gen Laws 2472, 2474
(current version at Tex. R. Evid. 609) ................................................. 13

TEX. CRIM. PROC. CODE ANN. art. 38.22 (Vernon Supp. 2015) ................... 12

TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2008) ...................................... 6

TEX. TRANSP. CODE ANN. § 545.352 (Vernon 2011) ................................... 36

TEX. TRANSP. CODE ANN. § 724.042 (Vernon 2011) ................................... 26

**RULES**

1 TEX. ADMIN. CODE § 159.103 (2015) ....................................................... 28

Tex. R. App. P. 33.1 ................................................................... 10, 11

Tex. R. Evid. 201 ........................................................................ 46

Tex. R. Evid. 401 ........................................................................ 19

Tex. R. Evid. 402 ........................................................................ 19

Tex. R. Evid. 701 ........................................................................ 44

Tex. R. Evid. 702 ................................................................... 18, 19

Tex. R. Evid. 802 ........................................................................ 18

**TREATISES**

Hulen D. Wendorf et al.,
TEXAS RULES OF EVIDENCE MANUAL, (6th ed., Juris, 2002).............. 44

## APPELLEE'S BRIEF

The Texas Department of Public Safety, Appellee in the above referenced cause, respectfully submits this brief in response to the appeal filed by Christopher Jaroszewicz. This appeal is from the County Court at Law No. 2, of Travis County, Texas, the Honorable Eric M. Shepperd, judge presiding, in which Appellant brought a petition for judicial review of the decision issued by the State Office of Administrative Hearings, the Honorable Wendy Harvel, judge presiding, sustaining the Department's suspension of Appellant's driver's license.

For clarity and brevity, the Appellant, Christopher Jaroszewicz, will be referred to as "Jaroszewicz," and the Appellee, Texas Department of Public Safety, will be referred to as "the Department." The State Office of Administrative Hearings will be referred to as "SOAH." The administrative law judge will be referred to as "the ALJ," and the County Court at Law No. 2 will be referred to as "the trial court." Citations to the clerk's record will be CR at [page number]. Citations to the reporter's record will be RR at [page number].

1

## STATEMENT OF THE CASE

The Department agrees with Jaroszewicz's statement of the procedural history of the case.

## WAIVER OF ORAL ARGUMENT

Appellee, Texas Department of Public Safety, acknowledges Appellant's waiver of oral argument and does not request oral argument in this case.

# REPLY POINTS PRESENTED

## ISSUE ONE

(in response to Appellant's Issue One)

Jaroszewicz's objection to the evidence of speeding was too general to preserve error. It did not inform the ALJ of the basis of the objection, and the basis of the objection was not clear from the context. The ALJ did not err by overruling the general objection.

## ISSUE TWO

(in response to Appellant's Issue Two)

Officer Martin made a visual estimation of Jaroszewicz's speed and confirmed that estimation through the use of radar equipment. The courts have repeatedly held such evidence— either independently, or considered together—to be sufficient to establish reasonable suspicion for a stop. The ALJ did not err in finding there was reasonable suspicion to stop Jaroszewicz.

## STATEMENT OF FACTS

The Appellant's brief does not contain a section designated as a statement of facts. Therefore the Department offers the following statement of facts.

At approximately 12:44 a.m., on October 11, 2014, Officer Anthony Martin of the Austin Police Department observed a black Dodge truck heading west in the 1200 block of West 6th Street. (CR at 42.) The Dodge passed by at what Officer Martin described as "a high rate of speed for the 30 mph zone." (CR at 42.) Officer Martin reported that he "measured the speed at 45 mph using Doppler radar." (CR at 42.)

Officer Martin stopped the truck and made contact with the driver, Christopher Jaroszewicz. (CR at 42.) Jaroszewicz was eventually arrested for driving while intoxicated, and he refused to provide a breath or blood specimen upon Officer Martin's request. (CR at 43, 44.) Jaroszewicz requested a hearing to contest the suspension of his driver license for refusing to provide a specimen. At the hearing, the evidence consisted of Officer Martin's report, which was admitted over Jaroszewicz's objections, and Jaroszewicz's driver record, which was admitted without objection. (CR at 33-34, 41-44, 46-47.) After the hearing concluded, the ALJ sustained the suspension of Jaroszewicz's driver license. (CR at 16.)

4

## SUMMARY OF THE ARGUMENT

Jaroszewicz's general objection to statements in Officer Martin's report did not meet the requirement of a specific objection informing the ALJ of the grounds for the objection. Thus, nothing was preserved for the trial court's or this Court's review.

If Jaroszewicz's objection were sufficient to preserve error, the ALJ properly overruled the objection. Officer Martin's lay opinion about Jaroszewicz's speed was admissible without a scientific predicate, as was the radar readout, which was not offered to prove that Jaroszewicz was actually speeding, but only to show that there was a reasonable basis for Officer Martin's belief that Jaroszewicz was speeding. And, even if the radar evidence was improperly admitted, Officer Martin's lay opinion was sufficient, by itself, to justify stopping Jaroszewicz's vehicle.

The ALJ properly overruled Jaroszewicz's general objection and correctly found there was reasonable suspicion for the stop. The trial court did not err by affirming the administrative decision. This Court should also affirm the administrative decision.

## STANDARD OF REVIEW

A court reviewing an administrative decision must affirm the administrative law judge's order if "some reasonable basis exists in the record for the action taken by the agency."[1] "The issue for the reviewing court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action."[2]

"The burden for overturning an agency ruling is quite formidable."[3] The administrative decision is presumed to be supported by substantial evidence, and the burden is on the contestant to prove that it should be reversed.[4] A court reviewing an administrative decision

> (2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, and decisions are:
>     (A) in violation of a constitutional or statutory provision;
>     (B) in excess of the agency's statutory authority;
>     (C) made through unlawful procedure;
>     (D) affected by other error of law;
>     (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>     (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[5]

---

[1] *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).
[2] *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999).
[3] *Tex. Dep't of Pub. Safety v. Pucek*, 22 S.W.3d 63, 67 (Tex. App.—Corpus Christi 2000, no pet.).
[4] *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994).
[5] TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2008).

A reversal of the administrative decision requires a conclusion by this Court "(1) that the agency's decision was erroneous for one of the reasons enumerated in subsections (A) through (F), *and* that substantial rights of the appellant have thereby been prejudiced."[6] If the ALJ committed any error in the administrative hearing, but Jaroszewicz's substantial rights were not prejudiced, reversal of the administrative order is not authorized.

The issue in this case is one of reasonable suspicion, which traditionally presents a mixed question of law and fact, but if the facts are not in dispute, the application of law to those facts is reviewed *de novo*.[7]

---

[6] *Tex. Dep't of Pub. Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex. App.—Houston [14th Dist.] 1997, no writ) (emphasis in original).
[7] *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 634 n.3 (Tex. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997).

## REPLY POINT ONE

### (Restated)

Jaroszewicz's objection to the evidence of speeding was too general to preserve error. It did not inform the ALJ of the basis of the objection, and the basis of the objection was not clear from the context. The ALJ did not err by overruling the general objection.

### ARGUMENT AND AUTHORITY

### I. Texas's Rules of Procedure Require a Specific and Timely Objection

#### A. Jaroszewicz's Objection Was Not Specific and Not Made Clear by Its Context.

Jaroszewicz's driver license was to be suspended due to his refusal to provide a breath or blood specimen for alcohol concentration testing after being arrested for driving while intoxicated. (CR at 29.) At the administrative hearing held to contest the suspension of his license, the only evidence presented regarding the merits of the suspension was Officer Martin's report of Jaroszewicz's arrest. (CR at 33-34, 41-44.) In the report, Officer Martin stated that he was parked on West 6th Street and he observed Jaroszewicz pass by "at a high rate of speed for the 30 mph zone." (CR at 42.) Officer Martin went on to say that he "measured the speed at 45 mph using Doppler radar." (CR at 42.)

8

Jaroszewicz objected to those two statements, saying:

> Your Honor, we would object to a portion of DPS-1; that being where it is stated—I believe he incorporated a—a search warrant affidavit for a subsequent blood draw.
> . . .
> I'm sorry, Affidavit for Arrest and Detention. And this affidavit that's incorporated is part of the DIC-23 wherein the officer states that he is—his visual ability to determine an excessive rate of speed and also wherein he states that he used radar to determine the actual speed. Other than those two areas stated in the affidavit we would have no objection." (CR at 33-34.)

Jaroszewicz's objection does not state a rule of evidence or any statute or case law on which the objection is based. He did not state whether he had the same objection to both statements about his speed, or different objections for each. Jaroszewicz's objection was so general that it gave the ALJ no guidance as to the basis for the objection. Without asking for clarification, the ALJ overruled the objection. (CR at 34.)

In order to preserve error, the record must show there was a timely objection that "stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."[8] Apparently conceding that he failed to make a specific objection, Jaroszewicz argues, "Under the facts and circumstances of the case at bar, counsel's objections were sufficient to

9

apprise the ALJ and the Department's prosecutor of the nature and basis of counsel's objections." (Appellant's brief at 6.)

B.      *Jaroszewicz Did Not Explain the Basis of His Objection Until Closing Arguments.*

It is true that defendants frequently object to evidence of speeding in ALR hearings. (Appellant's brief at 4, citing RR at 14.) However, the standard for preservation of error is not whether an objection is "new or novel." (Appellant's brief at 4.) The standard is whether the objection informs the court of the basis for the desired ruling:

> To preserve error, an objection must state the specific grounds for the desired ruling if those grounds are not apparent from the context of the objection. A specific objection is one which enables the trial court to understand the precise grounds so as to make an informed ruling, affording the offering party an opportunity to remedy the defect, if possible.[9]

The basis of an objection may be as old and familiar as the rules of evidence themselves, but if the objecting party does not inform the trial court of that basis, or if the basis is not obvious from the context of the objection at the time the objection is made, nothing is preserved for review.

After the closing of evidence, Jaroszewicz explained his objection. (CR at 34-38.) Then, and only then, did it become clear what the basis of his

---

[8] Tex. R. App. P. 33.1(a)(1)(A).
[9] *McKinney v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 772 S.W.2d 72, 74 (Tex. 1989) (citation omitted).

objection was, and that his argument was not new or novel. But, in order for his objection to be "apparent from the context," as required by Rule 33.1, Jaroszewicz needed to specify the basis of his objection at the time the objection was made, not during closing arguments.[10]

## C. The Cases Cited by Jaroszewicz Are Not Applicable to the Case at Bar.

In his brief, Jaroszewicz relies on *Hill v. State*, 641 S.W.2d 543 (Tex. Crim. App. 1982), and *Samuel v. State*, 688 S.W.2d 492 (Tex. Crim. App. 1985), to show that his own objection was sufficient to provide the ALJ with notice of the grounds for his objection. (Appellant's brief at 3.) However, Jaroszewicz's reliance on those cases is misplaced.

In *Hill*, the defendant filed a written motion to suppress the evidence in question.[11] The Court of Criminal Appeals explained that the language used in the written motion was sufficient, because it closely tracked statutory language that trial courts and prosecutors were familiar with.[12] By using the same language used in the statute, the defendant in *Hill* put the court on

---

[10] Tex. R. App. P. 33.1(a)(1)(A); *Gaytan v. State*, 331 S.W.3d 218, 229 (Tex. App.—Austin 2011, pet. ref'd) ("If the objection or motion to strike is made any later [than the first opportunity], error is waived."); *Jasso v. State*, 112 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("The standard set by our high court for the timely assertion of objections is both demanding and unforgiving.").

[11] *Hill v. State*, 641 S.W.2d 543, 544 (Tex. Crim. App. 1982).

[12] *Id*. ("Appellant's motion was very similar in wording to the language in Art. 14.01, supra, a statute familiar to trial courts and prosecutors throughout the State.").

11

notice of the grounds for his objection. In this case, at the time he lodged his objection, Jaroszewicz did not use language from any statute, rule of evidence, or case law that would inform the ALJ of the basis for his objection. *Hill* is inapplicable to the case at bar.

In *Samuel*, the defendant did not merely raise a general objection to the admission of the witness's testimony, he specifically objected to the witness's testimony about "statements [the defendant] made after he was under arrest."[13] The Court of Criminal Appeals held that the objection to statements made after the defendant was arrested was sufficient to inform the court that he was objecting to testimony that would infringe on the defendant's rights under Article 38.22 of the Code of Criminal Procedure, which protects post-arrest silence and statements made after a defendant is placed under arrest.[14]

By using language indicative of a specific statute, the defendant's objection in *Samuel* was sufficiently specific to put the trial court on notice of the basis of the objection. There is no statute, rule, or case law that generally prohibits the admission of radar evidence or visual estimates of

---

[13] *Samuel v. State*, 688 S.W.2d 492, 494 (Tex. Crim. App. 1985).
[14] *Id*. at 496. *See generally* TEX. CRIM. PROC. CODE ANN. art. 38.22 § 3(a) (Vernon Supp. 2015).

speed, so no context could be gleaned from the face of Jaroszewicz's objection. *Samuel* is inapplicable to the case at bar.

Even in *Zillender v. State*, 557 S.W.2d 515 (Tex. Crim. App. 1977), the case cited by Jaroszewicz for the proposition that "where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection," the objection was not as general as the one presented here. (Appellant's brief at 2, quoting *Zillender*, 557 S.W.2d at 517.) In *Zillender*, the defendant's prior probated conviction was introduced to impeach the defendant's testimony.[15] "Counsel for the [defendant] objected on the grounds that the conviction was not a final conviction and requested the opportunity, in the event his objection was overruled, to prove the lack of finality of the conviction by a bill of exception."[16] The Court of Criminal Appeals held that the objection invoked former Article 38.29 of the Code of Criminal Procedure, which prohibited impeachment of a witness by showing that there was an unresolved criminal charge pending against the witness.[17]

---

[15] *Zillender*, 557 S.W.2d at 517.

[16] *Id*.

[17] *Id*. *See generally* Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 471, *repealed by* Act of May 27, 1985, 69th Leg., R.S. ch. 685, § 9(b), 1985 Tex. Gen Laws 2472, 2474 (current version at Tex. R. Evid. 609); *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993) (stating that article 38.29 is the predecessor to Rule 609).

13

By objecting to the impeachment evidence on the basis that the conviction was not final, the defendant made clear that he was objecting based on a statute that prohibited exactly what he was objecting to. Again, the use of radar to measure speed or visual estimates of a vehicle's speed are not generally prohibited by any statute, rule, or case law, so there is no clear context for Jaroszewicz's objection. *Zillender*, except to the extent it states the general principal that context may rescue a general objection, is inapplicable to the case at bar.

## II.        *A General Objection That the Predicate Has Not Been Laid Does Not Preserve Error*

A.        *Objections That Merely Cite Rule 702 or Kelly Are General Objections That Do Not Preserve Error.*

When an objection is made at an ALR hearing, the objecting party usually states the basis for the objection. A person might object that radar evidence is not scientifically reliable, that the radar equipment was not shown to be in proper working order, that the operator was not qualified to use the equipment, or that the equipment was not used properly on the occasion in question.[18]

---

[18] *See generally Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) ("[E]vidence derived from a scientific theory, to be considered reliable, must satisfy three criteria in any particular case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question.").

14

In *Mills v. State*, 99 S.W.3d 200 (Tex. App.—Fort Worth 2002, pet. ref'd), the defendant objected to the radar evidence by questioning the validity of the underlying scientific theory of using radar to measure speed and whether the radar equipment used could accurately measure speed—i.e., the validity of the technique applying the scientific theory.[19] The Fort Worth Court of Appeals held this to be a sufficient objection because it specifically invoked two of the three prongs of the reliability test for scientific evidence announced in *Kelly*.

> While the State argues that Appellant's objection to the radar gun results was not sufficiently specific to preserve error, we note that Appellant's objection specifically complained of the validity of the scientific theories and the veracity of the instruments used to test those theories, which constitute two of the three *Kelly* requirements of reliability. As such, we believe that while Appellant's objection is not the picture of clarity, the context of his objection made clear that he was contesting the radar gun's reliability under *Kelly*.[20]

The objection in *Mills* is far more detailed than the one lodged by Jaroszewicz, and is instructive of what is required to preserve error.

On the other hand, in *Scherl v. State*, 7 S.W.3d 650 (Tex. App.—Texarkana 1999, pet. ref'd), the defendant objected to the admission of his breath test results on the grounds that they had not been shown to be

---

[19] *Mills v. State*, 99 S.W.3d 200, 201 (Tex. App.—Fort Worth 2002, pet. ref'd).
[20] *Mills*, 99 S.W.3d at 201-02.

admissible under Rule 702, *Daubert*, *Kelly*, and *Hartman*.[21]  The Texarkana

Court of Appeals held that, despite the invocation of a specific rule of

evidence and case law regarding the admissibility of scientific evidence,

Scherl had not preserved his objection.[22]

> An objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error.  Rule 702, *Daubert*, *Kelly*, and *Hartman* cover numerous requirements and guidelines for the admission of expert testimony.  An objection based on Rule 702 and these cases alone is effectively a general objection to an improper predicate and is by no means specific.[23]

Even though the objection in *Scherl* was far more detailed than the one

lodged by Jaroszewicz, it was held to be inadequate, due to the multitude of

arguments encompassed within the rule and cases cited.

Each of the three prongs of the *Kelly* test presents a separate basis for

objection that must be individually invoked.[24]  "The three requirements [of

---

[21] *Scherl*, 7 S.W.3d at 651.  *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Hartman v. State*, 946 S.W.2d 60, 62 (Tex. Crim. App. 1997); *Kelly*, 824 S.W.2d at 573.

[22] *Scherl*, 7 S.W.3d at 652 n.3.

[23] *Scherl*, 7 S.W.3d at 652 (citations omitted); *see also Delane v. State*, 369 S.W.3d 412, 429 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Moore v. State*, 109 S.W.3d 537, 542 (Tex. App.—Tyler 2001, pet. ref'd); *Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd).

[24] *Fletcher v. State*, 39 S.W.3d 274, 276-77 (Tex. App.—Texarkana 2001, no pet.) (holding the defendant's objections were specific enough to preserve error as to the witness's qualifications as an expert, but not as to the underlying scientific theory or the technique applying the theory).

16

expert testimony] raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another."[25]

Where a general objection encompasses multiple prongs and one of the prongs has been established as a matter of law, the general objection may be properly overruled on that basis. In *Scherl*, the Texarkana Court of Appeals held that the defendant's general *Kelly* objection might have been interpreted as an objection to the scientific theory of the intoxilyzer, and thus was properly overruled, because the scientific theory underlying the intoxilyzer had been validated by the legislature.[26]

By the same token, with respect to the scientific theory underlying the use of radar to measure speed, the first prong of the *Kelly* test has been held to be "indisputable and valid as a matter of law."[27] So, if the ALJ understood Jaroszewicz's general objection to the radar evidence to be a specific objection to the scientific theory underlying the use of radar, the ALJ properly overruled the objection, since the scientific theory underlying

---

[25] *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *accord Jessop v. State*, 368 S.W.3d 653, 688 (Tex. App.—Austin 2012, no pet.) (holding that the three requirements of expert testimony "raise distinct questions and issues").

[26] *Scherl*, 7 S.W.3d at 652.

[27] *Mills*, 99 S.W.3d at 202; *see also Perales v. State*, 117 S.W.3d 434, 442 (Tex. App.—Corpus Christi 2003, pet. ref'd) ("The underlying scientific principles of radar are valid. Thus, the first prong of *Kelly* is established as a matter of law."); *Maysonet v. State*, 91

the use of radar, like the scientific theory underlying the use of the intoxilyzer, has been conclusively established. Likewise, if the ALJ understood the objection to Officer Martin's visual estimation of Jaroszewicz's speed to be a specific objection that Officer Martin was not qualified to render an expert opinion, the ALJ could have properly overruled the objection, because the statement was admissible as a lay opinion.

## B. Jaroszewicz's General Objection Encompassed Numerous Potential Bases for an Objection

As an alternative to objecting to radar evidence under Rule 702, a person might object on the ground that the scientific basis for the evidence is hearsay.[28] Or a person might object that the readout from the radar gun, itself, is hearsay.[29] Hearsay involves a completely different rule of evidence than the rule which governs scientific evidence.[30] So, without reference to either a rule of evidence or case law, the basis of Jaroszewicz's objection to the radar evidence is not at all clear from the context.

---

S.W.3d 365, 371 (Tex. App.—Texarkana 2002, pet. ref'd) ("Radar's scientific validity is well settled in both the relevant scientific community and in Texas jurisprudence.").

[28] *Gano v. State*, 466 S.W.2d 730, 732 (Tex. Crim. App. 1971) ("Appellant's ninth ground of error, that the testimony of the patrolman as to the accuracy and acceptance of radar by the Texas Department of Public Safety is hearsay, is without merit."); *Maki v. State*, No. 05-07-00486-CR, 2008 WL 2688535, at *3 (Tex. App.—Dallas July 10, 2008, pet. ref'd) (mem. op., not designated for publication) (defendant objected to radar evidence as based on "hearsay science").

[29] *Cf. Stevenson v. State*, 920 S.W.2d 342, 343 (Tex. App.—Dallas 1996, no pet.) (rejecting a hearsay objection to self-generated data from an intoxilyzer).

[30] *Compare* Tex. R. Evid. 702, *with* Tex. R. Evid. 802.

Regarding visual evidence of a vehicle's speed, a driver might object that an officer's opinion that a person was speeding was based on speculation and conjecture,[31] that the officer was not qualified as an expert to render an opinion about a vehicle's speed,[32] or that the officer was rendering a legal opinion without having established sufficient underlying facts.[33] Each of these involves different rules of evidence. Speculation and conjecture would be subject to an objection under Rule 402.[34] On the other hand, an officer's qualifications as an expert would be subject to an objection under Rule 702, as would his ability to render a legal opinion, but for very different reasons.[35] A person might be a qualified expert in

---

[31] An example of testimony based on speculation and conjecture would be if an officer testified, "I saw the defendant at point A, then at X time later, I saw the defendant at point B, so he must have been going Y miles per hour."

[32] *See* Tex. R. Evid. 702.

[33] An example of an officer rendering a legal opinion without having established underlying facts would be if an officer testified, "I stopped the defendant because he violated section 545.352 of the Transportation Code," with nothing further. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (holding that the officer's testimony, only that the defendant was "following too close," was insufficient to establish reasonable suspicion for a stop).

[34] Tex. R. Evid. 402 ("Irrelevant evidence is not admissible."); *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) ("Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'") (quoting Tex. R. Evid. 401).

[35] Tex. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."); *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987) ("Fairness and efficiency dictate that an expert may state an opinion on a mixed question of law and fact as long as the opinion is

estimating a vehicle's speed, but not on the legal requirements for a violation of the Transportation Code, or vice versa.[36]

Jaroszewicz's general objection in this case could invoke—at a minimum—Rules of Evidence 402, 702, and 802, and multiple aspects of Rule 702, each of which raises distinct questions and issues and must be objected to independently. His objection did not put the ALJ on notice of the basis for his complaint and it preserved nothing for review.

## C.    *Jaroszewicz's Argument on Appeal Is Different Than His Objection at Trial*

Perhaps the best evidence of the fact that Jaroszewicz's objection preserved nothing for review is the way that his objection to the non-radar evidence has changed over time. At the administrative hearing, during closing arguments, Jaroszewicz invoked only the first two prongs of *Kelly*, explaining his objection to the visual estimation of his speed in terms of the

---

confined to the relevant issues and is based on proper legal concepts."); *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) ("[I]t is improper to allow any opinion evidence as to the guilt or innocence of a criminal defendant.").

[36] *See Schronk v. City of Burleson*, 387 S.W.3d 692, 705 (Tex. App.—Waco 2009, pet. denied) (holding that witnesses should have been allowed to testify that city violated manufacturer's guidelines, but not that conduct violated a provision of the Health and Safety Code); *Puente v. A.S.I. Signs*, 821 S.W.2d 400, 402 (Tex. App.—Corpus Christi 1991, writ denied) ("[Rule 704] permits an expert to testify to ultimate issues which are mixed questions of law and fact, such as whether particular conduct constitutes negligence. This rule is not authority for permitting an expert to give an opinion or state a legal conclusion regarding a question of law.") (citation omitted).

scientific theory underlying visual estimations of speed, and the technique used to apply that theory:

> In addition, as concerns the officer's observation, there is no showing that an officer's observation in determining speed with his eyes is a theory or technique that can be tested. It's not a technique or a theory that has been subject to peer review or publication and it is not a—a technique where there is a known rate or potential rate of error. In addition, an officer's simple observation of an exceeding the speed limit is not generally accepted in the scientific community. He may—and I would question seriously because there's been no foundation laid as to the officer's own qualifications as an expert. There's absolutely no literature concerning the officer's observations regarding that technique and there—there's no known potential rate of error or the techniques for determining potential rates of error and no one else could possibly evaluate the officer's technique in making that determination or recreate it using that technique; therefore, both—both instances where the officer makes a—a conclusory statement regarding speed for this particular case and under the facts offered by the DPS in this particular case do not add up to reasonable suspicion to conduct the stop. (CR at 36-37.)

In the appeal at the county court at law, Jaroszewicz's argument against the visual estimation abandoned the first two prongs of *Kelly*, and focused exclusively on the third prong of *Kelly*, the application of the theory on the occasion in question:

> And the [*Daubert*] case which on our side of the docket, criminal law docket, is *Kelly v. State*. As I indicated with regard to the first ground and that being he was traveling at a high rate of speed for a 35 miles per hour zone. There is no basis stated in the affidavit as what this officer's training is, how many times he made such a determination, how he was

21

trained to make such a determination, whether or not he's been doing this for years or a day. (RR at 6.)

Finally, in his appeal to this Court, Jaroszewicz's argument against the visual estimation of his speed is primarily against the weight of the evidence and its sufficiency to establish reasonable suspicion due to the alleged absence of articulated facts. (Appellant's brief at 11-14.) Tucked inside those arguments is a single sentence that might be an objection under the third prong of *Kelly* and Rule 702: "Neither was there any demonstration of the officer's knowledge and experience in making such a determination [of speed by visual estimation]." (Appellant's brief at 12.) However, that same sentence might also be an objection to Officer Martin's ability to offer a lay opinion under Rule 701. Jaroszewicz cites neither *Kelly*, nor Rule 702, nor Rule 701 in Section C of his brief, so it is impossible to say which rule he is now basing his argument on.

Regardless of whether Jaroszewicz is still claiming a violation of Rule 702 and the third prong of *Kelly*, as he did in the county court at law, or whether he is now claiming a violation of Rule 701, his argument on appeal does not comport with the objection that he laid out in closing arguments at the administrative hearing, which focused on the scientific theory and technique of visually estimating speed. (CR at 36-37.) "Where the complaint on appeal does not comport with the trial objection, nothing is

22

presented for review."[37]  "An objection stating one legal basis may not be used to support a different theory on appeal."[38]  Jaroszewicz's general objection at the administrative hearing preserved nothing for review.  This Court should not entertain any argument based on Jaroszewicz's general objections from the administrative hearing.

---

[37] *Williams v. State*, 191 S.W.3d 242, 255 (Tex. App.—Austin 2006, no pet.).
[38] *Gutierrez v. State*, 85 S.W.3d 446, 453 (Tex. App.—Austin 2002, pet. ref'd).

## REPLY POINT TWO

### (Restated)

Officer Martin made a visual estimation of Jaroszewicz's speed and confirmed that estimation through the use of radar equipment. The courts have repeatedly held such evidence—either independently, or considered together—to be sufficient to establish reasonable suspicion for a stop. The ALJ did not err in finding there was reasonable suspicion to stop Jaroszewicz.

## ARGUMENT AND AUTHORITY

### I. *The ALJ Did Not Err by Overruling Jaroszewicz's Objection to the Radar Evidence*

At the administrative hearing contesting the suspension of Jaroszewicz's driver license, the Department offered Officer Martin's report, in which Officer Martin stated that he first observed Jaroszewicz driving at "a high rate of speed for the 30 mph zone." (CR at 42.) After visually observing Jaroszewicz to be exceeding the speed limit, Officer Martin confirmed his observation through the use of radar. He reported that he "measured the speed at 45 mph using Doppler radar." (CR at 42.)

Jaroszewicz objected to both the visual estimation of his speed and the radar evidence. (CR at 33-34.) The ALJ properly overruled the objections. Leaving aside the vagueness of the objections discussed above, the radar readout was not offered to prove that Jaroszewicz was actually traveling 45

24

miles per hour, but rather to corroborate Officer Martin's statement that Jaroszewicz was exceeding the speed limit:

> The Department's position is that because the evidence of measuring the defendant's speed is going to the element of reasonable suspicion to make the stop, the only issue here is whether the officer reasonably relied on that [evidence] and it's not necessary for the Department to put forward the scientific predicate for the admissibility of that evidence. Since we're not actually trying to prove the speeding, we're just trying to show that the officer had enough information at that time to suspect that a violation of the law was taking place. (CR at 37.)

In his brief to this Court, Jaroszewicz relies on two cases to show that the radar evidence was improperly admitted, *Maysonet v. State*, 91 S.W.3d 365 (Tex. App.—Texarkana 2002, pet. ref'd) and *Ochoa v. State*, 994 S.W.2d 283 (Tex. App.—El Paso 1999, no pet.). (Appellant's brief at 9-11.) Since the arguments presented in *Maysonet* draw heavily from the holding in *Ochoa*, the Department will address the latter case first.

A.    *Ochoa Does Not Govern the Outcome of This Case.*

*Ochoa* does not apply to the present case, because, in that case, the defendant was charged with speeding.[39]  Consequently, the radar evidence was offered to prove the scientific fact that Ochoa was actually traveling 51 miles per hour in a 35 mile per hour speed zone.[40]  In this case, the radar evidence was not offered to prove that Jaroszewicz was actually traveling 45

25

miles per hour in a 30 mile per hour speed zone, only to show the reasonableness of Officer Martin's belief that Jaroszewicz was speeding.

In *Ochoa*, the state was obliged to prove that Ochoa actually was speeding. However, in the present case, the Department did not have to prove—and was not attempting to prove—that Jaroszewicz actually was speeding. The Department was only trying to prove that Officer Martin had a reasonable belief that Jaroszewicz was speeding.[41] Whether the radar readout was actually accurate is ultimately of no consequence.[42] All that is

---

[39] *Ochoa*, 994 S.W.2d at 284.

[40] *Id.*

[41] TEX. TRANSP. CODE ANN. § 724.042(1) (Vernon 2011); *Madden v. State*, 242 S.W.3d 504, 518 n.7 (Tex. Crim. App. 2007) ("The factual issue for the jury is not whether appellant *was* speeding, the issue is whether Officer Lily had a reasonable belief that he was speeding. Even police officers may be mistaken about an historical fact such as 'speeding,' as long as that mistake was not unreasonable.") (emphasis in original); *Hesskew v. Tex. Dep't of Pub. Safety*, 144 S.W.3d 189, 191 (Tex. App.—Tyler 2004, no pet.) ("When a law enforcement officer stops someone on a public road, it is only necessary that he reasonably believes that a violation was in progress."); *Tex. Dep't of Pub. Safety v. Nielsen*, 102 S.W.3d 313, 317 (Tex. App.—Beaumont 2003, no pet.) ("The officer estimated Nielsen was driving at least sixty-five to seventy miles per hour in an area with a speed limit of fifty-five. DPS was not required to show that a traffic offense actually was committed, but only that the officer reasonably believed that a violation was in progress."); *Bland v. Tex. Dep't of Pub. Safety*, No. 14-12-01057-CV, 2013 WL 3868447, at *4 (Tex. App.—Houston [14th Dist.] July 23, 2013, pet. denied) (mem. op.) ("The Department was not required to show that a traffic offense actually was committed, but only that the officer reasonably believed that a violation was in progress or had occurred.").

[42] *Icke v. State*, 36 S.W.3d 913, 916 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ("A stop that meets the test for reasonable suspicion is lawful even if the facts supporting the stop are ultimately shown to be inaccurate or false."); *Kelly v. State*, 721 S.W.2d 586, 587 (Tex. App.—Houston [1st Dist.] 1986, no pet.) ("A reasonable suspicion may be based on articulable facts, even if such facts are ultimately shown to be inaccurate or false."); *Thomas v. State*, No. 08-05-00247-CR, 2007 WL 1404425, at *3 (Tex. App.—El

important is that the readout confirmed Officer Martin's visual estimation of Jaroszewicz's speed.[43]

The radar evidence, as used in this case, is analogous to the use of a portable breath test. The analytical results of a portable breath test are not scientifically reliable enough to be admitted in court, but the test can be used as part of the totality of the circumstances to establish probable cause to believe a person has been driving while intoxicated.[44] Similarly, the radar readout in this case may not have been shown to meet the requirements of evidentiary scientific reliability, but, when combined with Officer Martin's

Paso May 10, 2007, pet. ref'd, untimely filed) (not designated for publication) ("Even if the radar reading is ultimately shown to be inaccurate or false, when an officer relies on radar to conduct a traffic stop, he has developed reasonable suspicion that a defendant was speeding."); *Heredia v. State*, No. 08-06-00011-CR, 2007 WL 1704952, at *3 (Tex. App.—El Paso June 14, 2007, no pet.) (not designated for publication) ("[E]ven if it were later shown that Sgt. Ortiz's estimation of Appellant's speed was incorrect due to equipment problems, a stop that meets the test for reasonable suspicion is lawful, notwithstanding a subsequent determination that the equipment was faulty.").

[43] *Gutierrez v. State*, 327 S.W.3d 257, 263 (Tex. App.—San Antonio 2010, no pet.) ("[T]he radar reading merely confirmed Officer Lewis's initial observation that Gutierrez appeared to be traveling faster than the posted speed limit. This evidence is sufficient to support a finding that Officer Lewis had reasonable suspicion that Gutierrez was speeding."); *Icke*, 36 S.W.3d at 916. ("Officer Platt also testified that the radar merely confirmed his suspicion that appellant was speeding. These factors, considered alone or in combination with the radar, rise to the level of reasonable suspicion."); *Tex. Dep't of Pub. Safety v. Narvaez*, No. 13-14-00114-CV, 2014 WL 5410758, at *4 (Tex. App.—Corpus Christi Oct. 23, 2014, no pet.) (mem. op.) ("Corporal Longoria's visual observation and the radar reading, whether considered independently or in conjunction with each other, constituted sufficient evident to support the ALJ's finding that 'reasonable suspicion to stop [Narvaez] existed.'"); *Thomas*, No. 08-05-00247-CR, at *3 ("In most cases, when an officer observes an automobile traveling at a high rate of speed and confirms speed by use of radar, the resulting traffic stop is reasonable.").

[44] *Fernandez v. State*, 915 S.W.2d 572, 576 (Tex. App.—San Antonio 1996, no pet.).

visual observation, it formed part of the totality of the circumstances that gave him reasonable suspicion to stop Jaroszewicz.

The radar evidence is also analogous to an anonymous face-to-face tipster who voluntarily approaches an officer to report at crime. Although the tipster may never actually be identified, she places herself in a position to be identified, and thus is given greater credibility than an anonymous tipster who phones in a tip.[45] Similarly, the radar evidence in this case, although not actually presented at trial, was in a position to be tested, if there were actually a contested factual issue concerning Jaroszewicz's speed.[46] Therefore, Officer Martin could reasonably rely on the evidence as part of the totality of the circumstances when forming his reasonable suspicion to stop Jaroszewicz.

B.    *Maysonet Does Not Govern the Outcome of This Case.*

*Maysonet*, the second case relied upon by Jaroszewicz also does not apply to this case because the *Maysonet* court was not presented with the same arguments presented in this case. In *Maysonet*, the officer testified that "his primary basis for stopping Maysonet was a radar reading of seventy-

---

[45] *Arizpe v. State*, 308 S.W.3d 89, 92-93 (Tex. App.—San Antonio 2010, no pet.); *State v. Fudge*, 42 S.W.3d 226, 232 (Tex. App.—Austin 2001, no pet.).
[46] *See* 1 TEX. ADMIN. CODE § 159.103 (2015) (permitting issuance of subpoenas); *Tex. Dep't of Pub. Safety v. Duggin*, 962 S.W.2d 76, 81 (Tex. App.—Houston [1st Dist.]

four miles per hour in a seventy-mile-per-hour posted speed zone."[47] There was no testimony that the officer had an independent belief that Maysonet was speeding aside from the radar reading, so the State's entire justification for the stop rested on a radar reading that showed the defendant was going only four miles per hour above the speed limit.[48] Consequently, the radar evidence in *Maysonet*, like the radar evidence in *Ochoa*, but unlike the radar evidence in the case at bar, was offered to prove that the defendant was actually traveling 74 miles per hour in a 70 mile per hour speed zone.

In *Maysonet*, the State presented evidence that the officer had extensive experience using radar, and that he had calibrated and tested the unit the day before he arrested Maysonet.[49] This satisfied the requirements for admissibility under *Masquelette v. State*, 579 S.W.2d 478 (Tex. Crim. App. 1979), and the State argued that *Masquelette* dispensed with the need to prove the scientific theory of radar, as required by *Kelly*.[50]

Maysonet, relying on *Ochoa*, argued that *Masquelette* predated *Kelly*, and was abrogated by *Kelly*, so the State was required to prove the underlying scientific theory of radar evidence, as the *Ochoa* court had

---

1997, no pet.) ("If Duggin had wanted to confront and cross-examine the witnesses, he could have requested they be subpoenaed.").

[47] *Maysonet*, 91 S.W.3d at 368.

[48] *Id*.

ruled.[51]  The court rejected Maysonet's argument and held that, while *Kelly* applied to radar evidence, it did not abrogate *Masquelette*, and the State was not required to prove the underlying scientific theory of radar.[52]

The *Maysonet* court did conclude that the admissibility of radar evidence was dependent on meeting the second and third prongs of *Kelly*, "that officers applied a valid technique and that it was correctly applied on the particular occasion in question."[53]  However, as demonstrated above, the arguments raised in that case are not the arguments raised in the case at bar. In *Maysonet*, the State offered the radar evidence to prove the scientific fact of Maysonet's speed.  The State argued that it had met the scientific predicate to admit the evidence for that purpose.  In the case at bar, the radar evidence was not offered to prove the scientific fact of Jaroszewicz's speed, only to show that Officer Martin's belief that Jaroszewicz was speeding was reasonable.  Thus, it was not necessary to present evidence establishing the scientific reliability of the evidence.

---

[49] *Id*. at 370.
[50] *Id*. at 369.  *See generally Masquelette*, 579 S.W.2d at 481.
[51] *Maysonet*, 91 S.W.3d at 369-70; *cf. Ochoa*, 994 S.W.2d at 284.
[52] *Maysonet*, 91 S.W.3d at 370-71.
[53] *Id*. at 371.

*C.* *Chavez Governs the Outcome of This Case.*

Although *Ochoa* and *Maysonet* do not address the issues raised in this case, there is a case that is squarely on point. In *Chavez v. State*, No. 08-05-00371-CR, 2006 WL 2516974 (Tex. App.—El Paso Aug. 31, 2006, pet. ref'd) (not designated for publication) the El Paso Court of Appeals addressed the arguments presented in this case. In *Chavez*, a police officer saw the defendant speeding.[54] The officer's radar indicated that Chavez was driving sixty-two miles per hour in a forty-five mile per hour speed zone.[55] Chavez was arrested for driving while intoxicated and moved to suppress the evidence on the ground that there was not reasonable suspicion for the stop.[56]

In Chavez's first issue on appeal, he argued that the radar evidence should have been excluded because the State failed to meet the second prong of the *Kelly* test: "[T]he trial court erred in allowing Officer Arevalo to testify at the motion to suppress hearing regarding his speed because the State did not establish the radar unit was scientifically reliable."[57] Chavez argued that "because the radar unit was not proven to be scientifically

---

[54] *Chavez*, No. 08-05-00371-CR, at *1.
[55] *Id.*
[56] *Id.*
[57] *Id.*

reliable, Officer Arevalo's testimony regarding his speed was inadmissible."[58]

In the case at bar, Jaroszewicz argues that the radar evidence should have been excluded because the Department failed to meet the second and third prongs of *Kelly*:

> There was no evidence offered to show the officer's knowledge and experience of the radar unit, how it operated, whether he calibrated the unit, or even knew how to calibrate it, whether he tested the unit, or even knew how to test it, or how long he had been using radar to detect speed, if ever. In the absence of such evidence, the Department wholly failed to establish prongs two or three of Kelly and the radar evidence should have been excluded. (Appellant's brief at 11.)

The arguments are substantially similar, except that Jaroszewicz also includes the third prong of *Kelly*, which was not at issue in *Chavez*.

In *Chavez*, unlike the case at bar, there was substantial testimony that might have been considered when examining the second and third prongs of *Kelly*.[59] However, that is a distinction without a difference, because in *Chavez* the court did not perform a *Kelly* analysis of the radar evidence, even though it formed the basis of Chavez's appeal.

Although Chavez's objection was indisputably based on the second prong of *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992), that case is

---

[58] *Id*. at *2.

not cited anywhere in the *Chavez* court's opinion. Instead, the court of appeals ignored Chavez's scientific predicate argument, holding that the reasonable suspicion for the stop was not contingent upon the scientific reliability of the radar unit.

> [E]ven if the radar reading is ultimately shown to be inaccurate or false at the time of the stop, Officer Arevalo had developed a reasonable suspicion Appellant was speeding. Therefore, based on the totality of circumstances, Officer Arevalo was justified in making the lawful stop because the radar reading indicated Appellant had exceeded the posted speed limit.[60]

Just as in this case, the reasonable suspicion for the stop was contingent upon the officer's pre-existing reasonable belief that the defendant was speeding, which was supported by the radar evidence, regardless of the scientific reliability of the radar evidence. As the court held when addressing Chavez's second point of appeal,

> Officer Arevalo testified Appellant's speed drew his attention to the vehicle and the radar unit indicated Appellant was driving sixty-two miles per hour in a forty-five mile per hour zone. . . . In considering the totality of circumstances and in viewing the evidence in the light most favorable to the trial court's ruling, Officer Arevalo had articulable facts that Appellant had committed a traffic violation.[61]

The radar evidence in this case was not offered to prove the scientific fact that Jaroszewicz was traveling 45 miles per hour in a thirty mile per

---

[59] *Id*. at *1.
[60] *Id*. at *2 (citations omitted). *See* cases cited *supra* note 42.

hour speed zone. It was only offered to show that Officer Martin corroborated his pre-existing belief that Jaroszewicz was speeding. The radar reading was merely a part of the totality of the circumstances. Even if it were later shown at trial that the radar equipment was not working properly, that would not change the fact that, at the time of the stop, Officer Martin had a reasonable suspicion, based on articulated facts, to believe Jaroszewicz was committing a traffic offense.

## II. Officer Martin's Lay Opinion Was Sufficient to Establish Reasonable Suspicion

Jaroszewicz's final argument concerns Officer Martin's statement that he observed Jaroszewicz traveling "at a high rate of speed for the 30 mph zone." (CR at 42. *But see* Appellant's brief at 12 ("For purposes of this issue, there was one sentence in the DIC-23 wherein the officer wrote 'Your affiant observed [Appellant] pass WB on W. 6th St. at a high rate of speed.")). At the administrative hearing, Jaroszewicz challenged the scientific theory of visually estimating speed and the technique used to apply that theory. (CR at 36.) At the appeal before the county court, Jaroszewicz challenged Officer Martin's ability to apply the technique on the occasion in question. (RR at 6.) And, before this Court, Jaroszewicz challenges the

---

[61] *Id*. at *2 (citations omitted).

sufficiency of the evidence, based on an alleged absence of articulable facts. (Appellant's brief at 12.) In an abundance of caution, the Department will address all three of these objections, beginning with Jaroszewicz's argument to this Court.

A.  *An officer's opinion that the driver is exceeding the speed limit is sufficient for reasonable suspicion without confirmation by radar.*

In his brief to this Court, Jaroszewicz argues primarily that Officer Martin did not articulate sufficient facts to support a finding of reasonable suspicion for the stop. (Appellant's brief at 11-12.) Although Jaroszewicz appears to be arguing against the weight and sufficiency of the evidence, he concludes that, due to the alleged absence of articulable facts, the evidence should not have been admitted. "There is no indication in the record of the officer's knowledge and experience or facts or inferences drawn from facts that amount to specific articulable facts to establish the necessary reasonable suspicion to justify the traffic stop. Therefore, this evidence, too, should not have been admitted." (Appellant's brief at 14.)

Even if Jaroszewicz were correct about the absence of articulated facts, he would be mistaken about the consequence. It is not the rule that any particular piece of evidence must be sufficient, by itself, to establish a

35

fact in order for it to be admissible.[62] If that were the case, no circumstantial evidence could ever be admitted.[63] Whether evidence, once properly admitted, is sufficient to establish a fact is an altogether different question from that of admissibility, in the first instance.[64]

Officer Martin stated that Jaroszewicz was traveling "at a high rate of speed for the 30 mph zone." (CR at 42.) No additional facts are necessary for the ALJ to believe that Officer Martin saw Jaroszewicz exceeding the posted speed limit of 30 miles per hour.[65] Thus, Officer Martin had a reasonable suspicion that Jaroszewicz was violating section 545.352 of the Transportation Code.[66]

---

[62] *Cf. Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991) ("The 'totality of the circumstances' test applies in Texas for determining probable cause for a warrantless search and seizure."); *Myles v. State*, 946 S.W.2d 630, 634 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ("An officer need not observe all the elements of an offense, but merely reasonably believe that an offense is occurring in order to make an arrest.").

[63] *But see Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. Circumstantial evidence alone is sufficient to establish guilt.") (citations omitted).

[64] *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711-14 (Tex. 1997) (holding that evidence may be admissible under *Daubert*, but still legally insufficient to support a verdict).

[65] *Hesskew*, 144 S.W.3d at 192 ("Sworn affidavits of law enforcement officers must be viewed by the courts in a common sense, not hyper-technical, fashion. Courts are permitted to draw reasonable inferences from the facts supporting a law enforcement officer's sworn statements.") (citations omitted).

[66] TEX. TRANSP. CODE ANN. § 545.352(a) (Vernon 2011) ("A speed in excess of the limits established by Subsection (b) or under another provision of this subchapter is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful.").

This case is similar to numerous others where an officer was found to have reasonable suspicion based on his observation of a car driving at a rate of speed that was believed to be above the posted limit.[67] In *Dillard v. State*, the Court of Criminal Appeals found there was reasonable suspicion of speeding where the officer testified the defendant was driving in excess of the speed limit, although the officer did not know the precise speed.[68] In *Icke v. State*, the court of appeals held that the officer's opinion that the defendant was speeding in excess of the 45 mile per hour speed limit was sufficient, on its own, to create reasonable suspicion.[69] In *Ochoa v. State*, the court of appeals held there was no reversible error due to the improper admission of the radar results where the officer testified that, in his opinion, the defendant "was driving at a 'high rate of speed,' and that in his opinion,

[67] *See Markle v. State*, No. 01-13-01028-CR, 2015 WL 505194, at *3 (Tex. App.—Houston [1st Dist.] Feb. 5, 2015, pet. ref'd) (mem. op., not designated for publication) ("Deputy Goodney's observation of appellant's speeding was alone sufficient to justify the traffic stop."); *Warren v. State*, No. 05-08-01431-CR, 2009 WL 3467013, at *4 (Tex. App.—Dallas Oct. 29, 2009, no pet.) (not designated for publication) ("Burnett's visual observation of appellant's vehicle made him reasonably suspicious that appellant was speeding."); *Simpson v. State*, No. 07-07-0310-CR, 2008 WL 4367960, at *2-3 (Tex. App.—Amarillo Sept. 25, 2008, no pet.) (mem. op., not designated for publication) ("An officer's visual estimate of a vehicle's speed may be sufficient to give an officer a reasonable suspicion to stop the vehicle."); *Thomas*, No. 08-05-00247-CR, at *3 ("Here, Trooper Buford testified that he observed Appellant traveling at what appeared to him to be a high rate of speed. We note that an officer's visual estimates of speed can suffice to establish reasonable suspicion to conduct a traffic stop.").
[68] *Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977).
[69] *Icke*, 36 S.W.3d at 916.

she was exceeding the speed limit."[70] In *Hesskew v. Texas Department of Public Safety*, the court of appeals held that, "[w]hen a law enforcement officer observes a vehicle traveling what he believes to be fifteen miles over the posted speed limit, a traffic stop is justified."[71] All of these cases stand for the same proposition at issue in this case—a peace officer's opinion that a person is exceeding the speed limit is a sufficient factual basis upon which an investigative detention may be initiated.

Jaroszewicz's effort to distinguish many of the cases cited by the Department for support on this point fails. Jaroszewicz attempts to distinguish *Dillard* on the ground that the officer in in that case pursued the defendant. (Appellant's brief at 13.) In the case at bar, Officer Martin was parked in the 1200 block of West 6th Street when he saw Jaroszewicz and effected the stop in the 1700 block of West 6th Street. So there was also a pursuit in this case. (CR at 42.)

Jaroszewicz attempts to distinguish *Icke* on the ground that the officer in that case testified that the defendant was "ahead" of other vehicles. (Appellant's brief at 13.) But, although Icke's position relative to the other cars is specified, there is no mention of Icke's speed relative to the other

---

[70] *Ochoa*, 994 S.W.2d at 285.
[71] *Hesskew*, 144 S.W.3d at 191.

cars.[72]  An officer's ability to estimate a vehicle's speed is obviously not contingent on the fact that the vehicle in question is leading other vehicles.

Jaroszewicz attempts to distinguish *Smith v. State*, No. 05-96-00765-CR, 1998 WL 46736 (Tex. App.—Dallas Feb. 6, 1998, no pet.) (not designated for publication) on the ground that the officer in that case heard the defendant racing his engine.  (Appellant's brief at 13.)  However, that distinction is not dispositive of the court's actual holding, "A police officer's testimony that a vehicle he observed was speeding is sufficient to establish that the traffic law has been violated."[73]  Obviously, a vehicle could race its engine without exceeding the speed limit or exceed the speed limit without racing its engine.

Jaroszewicz attempts to distinguish *Heredia v. State*, No. 08-06-00011-CR, 2007 WL 1704952 (Tex. App.—El Paso June 14, 2007, no pet.) (not designated for publication) on the ground that the officer in that case "paced" the defendant.  (Appellant's brief at 13.)  However, the defendant in that case raised essentially the same objection to the pacing that Jaroszewicz raised in this case to the radar evidence—"that the pacing procedure was invalid due to lack of substantiation that the vehicle's equipment, including

---

[72] *Icke*, 36 S.W.3d at 914.
[73] *Smith*, No. 05-96-00765-CR, at *3.

the speedometer, was working properly."[74]  The court declined to perform a *Kelly* analysis of the pacing technique or its application on the occasion in question, and instead, responded that "even if it were later shown that Sgt. Ortiz's estimation of Appellant's speed was incorrect due to equipment problems, a stop that meets the test for reasonable suspicion is lawful, notwithstanding a subsequent determination that the equipment was faulty."[75]

Jaroszewicz attempts to distinguish *Thomas v. State*, No. 08-05-00247-CR, 2007 WL 1404425 (Tex. App.—El Paso May 10, 2007, pet. ref'd, untimely filed) (not designated for publication) and *Simpson v. State*, No. 07-07-0310-CR, 2008 WL 4367960 (Tex. App.—Amarillo Sept. 25, 2008, no pet.) (mem. op., not designated for publication) on the grounds that the officers in those cases were able to estimate a specific speed. (Appellant's brief at 13.)  However, that requirement was specifically rejected by the Court of Criminal Appeals in *Dillard*.[76]

Jaroszewicz attempts to distinguish *Curran v. State*, No. 07-10-0078-CR, 2011 WL 446191, at *1 (Tex. App.—Amarillo Feb. 8, 2011, pet. ref'd)

---

[74] *Heredia*, No. 08-06-00011-CR, at *3.
[75] *Id.*
[76] *Dillard*, 550 S.W.2d at 53 ("We disagree with appellants' contention that unless Bragg knew the exact speed which the automobile was traveling, no violation occurred.").

40

(mem. op., not designated for publication) on the ground that the defendant in that case admitted speeding. (Appellant's brief at 14.) However, it is not clear how this distinction is relevant, since there is no indication that the officer ever offered his own estimation of Curran's speed.[77] If anything, the holding in *Curran*, "Speed is one area in which lay opinions may be offered,"[78] actually supports the Department's position, as will be discussed further below.

Jaroszewicz attempts to distinguish *Tex. Dep't of Pub. Safety v. Nielsen*, 102 S.W.3d 313 (Tex. App.—Beaumont 2003, no pet.), *Heredia*, *supra*, and *Crook v. State*, No. 14-12-00960-CR, 2013 WL 6164058 (Tex. App.—Houston [14th Dist.] Nov. 21, 2013, no pet.) (mem. op., not designated for publication) on the grounds that the defendants in those cases were passing other vehicles. (Appellant's brief at 13-14.) This is another distinction without a difference as evidenced by the fact that there are numerous other cases where the officer was able to observe that the defendant was speeding, even though the defendant was not passing other vehicles. As with the racing engine, a vehicle may pass other cars without

---

[77] *Curran*, No. 07-10-0078-CR, at *1.
[78] *Id*.

41

exceeding the speed limit or a vehicle may exceed the speed limit without passing other cars.

Finally, Jaroszewicz attempts to distinguish *Tex. Dep't of Pub. Safety v. Narvaez*, No. 13-14-00114-CV, 2014 WL 5410758 (Tex. App.—Corpus Christi Oct. 23, 2014, no pet.) (mem. op.) on the ground that the "officer testified the vehicle appeared to be traveling faster than the 30 mph posted speed limit." (Appellant's brief at 14.) Again, this can only support the Department's case, since the wording in *Narvaez*, "driving faster than the 30 mph posted speed limit,"[79] is substantially similar to the language in this case, where Officer Martin reported that Jaroszewicz passed by him "at a high rate of speed for the 30 mph zone." (CR at 42.) Jaroszewicz's efforts to distinguish this case from others where an officer's reasonable suspicion was based on an estimate of the defendant's speed fail repeatedly.

It also bears repeating that the issue in this case is not whether or not Jaroszewicz actually was speeding. The Amarillo Court of Appeals addressed this same point in a similar case.

> We are mindful that appellant's issue challenges Catalona's reasonable suspicion to stop appellant rather than the sufficiency of the evidence to prove the exact speed at which appellant was traveling. While appellant's argument could very well affect the weight to be afforded evidence of the

---

[79] *Narvaez*, No. 13-14-00114-CV, at *3.

precise speed at which appellant was traveling just prior to Catalona stopping the vehicle, these arguments have little impact on our review of whether Catalona reasonably suspected that appellant was speeding.[80]

Officer Martin's observation that Jaroszewicz was traveling "at a high rate of speed for the 30 mph zone," was an articulable fact from which the ALJ could reasonably infer that Jaroszewicz was exceeding the posted speed limit and that Jaroszewicz was committing an offense, in violation of the Transportation Code. Thus, there were sufficiently articulated facts to establish reasonable suspicion to stop Jaroszewicz, even if Officer Martin was unable to estimate the precise speed of Jaroszewicz's vehicle without the use of radar.

## B.    Lay Witnesses May Testify About the Speed of Vehicles.

At the administrative hearing and in the county court at law, Jaroszewicz argued that Officer Martin's statement should be excluded because there was no proof of a scientific theory underlying visual estimation of speed, there was no scientifically validated technique for doing so, and because Officer Martin was not qualified by training to render an expert opinion about Jaroszewicz's speed. (CR at 36. RR at 6.) However, the Department was not offering Officer Martin's opinion about

---

[80] *Simpson*, No. 07-07-0310-CR, at *2 n.2.

Jaroszewicz's speed as scientific evidence or as an expert opinion. Rather, his opinion was offered as a lay opinion.

The reason an officer's opinion about a driver's speed will suffice for reasonable suspicion is that a lay witness may testify as to the speed of a vehicle.[81] Jaroszewicz was objecting under Rule 702, when he should have been objecting under Rule 701. Even if Jaroszewicz had made the proper objection, the ALJ could have properly overruled the objection, because almost any lay person may offer an opinion as to speed.

In *Littlefield v. State*, the Court of Criminal Appeals announced, "We have concluded that in this mechanized age almost any witness may express an opinion as to speed of an automobile."[82] In *Littlefield*, the testimony in question came from "a seventh grade school boy who lived near the

---

[81] *See* Tex. R. Evid. 701; *Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978) ("In this State, the opinions of lay witnesses, when competent, are admissible concerning sanity, insanity, value, handwriting, intoxication, physical condition health and disease, estimates of age, size, weight, quantity, time, distance, speed, identity of persons and things.").

[82] *Littlefield v. State*, 167 Tex. Crim. 443, 446, 321 S.W.2d 79, 82 (1959). *See also Parroccini v. State*, 90 Tex. Crim. 320, 325, 234 S.W. 671, 674 (1921) ("Tested by this rule it would be difficult to find a man, woman, boy, or girl living near any of our public roads who would not be a competent witness on the speed of automobiles."); *King v. State*, 129 S.W.3d 680, 685 (Tex. App.—Waco 2004, pet. ref'd) (Gray, C.J., concurring) ("The speed of a car, the height of a tree, the distance between objects, etc. are the proper subject of lay opinion testimony.") (citing Hulen D. Wendorf et al., TEXAS RULES OF EVIDENCE MANUAL, VII–3 & VII–8, (6th ed., Juris, 2002)) .

intersection," who testified that the defendant's pickup was traveling at least 60 miles per hour when it crashed into another car.[83]

Likewise, numerous other cases have permitted lay witnesses to testify that a car was traveling at, or above a specific speed. In *Parroccini v. State*, lay witnesses testified that the defendant was exceeding 25 miles per hour.[84] In *Davis v. State*, a lay witness testified that the defendant was traveling "'50 [mph] at least.'"[85] And in *Flores v. State*, a lay witness testified that the defendant was driving 40 miles per hour.[86]

Officer Martin could, as a lay witness, offer his opinion that Jaroszewicz was traveling faster than allowed in the 30 mph zone. Jaroszewicz did not object to Officer Martin's competence to offer a lay opinion.[87] But even if Jaroszewicz had objected to Officer Martin's competence to offer a lay opinion, the ALJ could have properly overruled the objection. Officer Martin drove a patrol car and his duties included monitoring traffic in the 1200 block of West Sixth Street in Austin,

---

[83] *Littlefield*, 167 Tex. Crim. at 446, 321 S.W.2d at 82.
[84] *Parroccini*, 90 Tex. Crim. at 325, 234 S.W. at 674.
[85] *Davis v. State*, No. 01-96-01039-CR, 1998 WL 85262, at *2 (Tex. App.—Houston [1st Dist.] Feb. 19, 1998, no pet.) (not designated for publication).
[86] *Flores v. State*, No. 05-93-00437-CR, 1994 WL 236410, at *3 (Tex. App.—Dallas May 31, 1994, no pet.) (not designated for publication).
[87] CR at 34, 36.

Texas[88]—a location generally known within the ALJ's jurisdiction to be a three-lane road near Austin's well-known entertainment district.[89]  Thus, Officer Martin was competent to offer lay witness testimony about Jaroszewicz's speed.[90]

The ALJ did not err by admitting Officer Martin's lay opinion about Jaroszewicz's speed.  Because Officer Martin's opinion is sufficient to support a finding that Jaroszewicz was committing the offense of speeding, in violation of the Transportation Code, the ALJ did not err by finding there was reasonable suspicion for the stop.

---

[88] CR at 42.

[89] *See generally* Tex. R. Evid. 201(b)(1); *Lozada-Mendoza v. State*, 951 S.W.2d 39, 44 (Tex. App.—Corpus Christi 1997, no pet.) ("A trial court is permitted to take judicial notice of prominent local geographical features as are generally known within its territorial jurisdiction and also capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."); *Tex. Dep't of Pub. Safety v. Botsford*, No. 03-13-00602-CV, 2014 WL 902567, at *4 (Tex. App.—Austin Mar. 7, 2014, no pet.) (mem. op.) ("Texas Rule of Evidence [201] allows a court to take judicial notice, whether requested or not, of a fact 'generally known within the territorial jurisdiction of the trial court' or a fact 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'").

[90] *Littlefield*, 167 Tex. Crim. at 446, 321 S.W.2d at 82 (holding a seventh grade boy who lived near an intersection was competent to render an opinion on a vehicle's speed); *Parroccini*, 90 Tex. Crim. at 325, 234 S.W. at 674 (holding witnesses who rode in or drove cars were competent to render opinions on a vehicle's speed).

## CONCLUSION

Jaroszewicz's objection to the Department's evidence, at the time it was offered, amounted to nothing more than a general objection to the evidence of his speed as contained in Officer Martin's report. Jaroszewicz's objection cited no statute, rule, or case law. Consequently, the context of his objection also provided no clue as to the basis for his objection. In closing arguments, after all of the evidence had been admitted and both sides had rested their cases, Jaroszewicz explained the basis for his objection. That was too late to preserve error for this Court.

Even if Jaroszewicz had preserved his error, the ALJ properly overruled his objections. The radar evidence was not offered to prove the scientific fact of Jaroszewicz's speed. It was merely offered to show the reasonableness of Officer Martin's belief that Jaroszewicz was speeding. If it later turned out that the radar was not accurate, that would not affect the officer's reasonable suspicion at the time of the stop. Therefore, the evidence was admissible without having to meet the *Kelly* predicate for scientific evidence.

Officer Martin's lay opinion as to Jaroszewicz's speed was also not subject to an objection under *Kelly*. In this modern age, where almost everyone drives or rides in cars, almost anyone can express a lay opinion

47

about a vehicle's speed. Officer Martin's statement that Jaroszewicz was traveling at a high rate of speed for the 30 mile per hour speed limit showed that Officer Martin believed Jaroszewicz was speeding, in violation of the Transportation Code. An officer's belief that a person is speeding is sufficient evidence to provide reasonable suspicion for a stop. The ALJ did not err in overruling Jaroszewicz's objection and finding there was reasonable suspicion for the stop. This Court should affirm the administrative decision sustaining the suspension of Jaroszewicz's driver license.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Department respectfully prays that this Honorable Court affirm the order of the County Court at Law No. 2 and affirm the administrative order of February 2, 2015, sustaining the Department's suspension of Jaroszewicz's driver's license. The Department further prays that it recover the costs of this appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 8.02 (Vernon Supp. 2002).

Respectfully Submitted,

*/s/  Kevin M. Givens*

KEVIN M. GIVENS
Supervising Attorney,
ALR Appellate Section
SBN 00796633
P.O. Box 15327
Austin, Texas 78761-5327
Tel:  (512) 424-5193
Fax:  (512) 424-5221
Kevin.Givens@dps.texas.gov

ATTORNEY FOR APPELLANT
TEXAS DEP'T OF PUB. SAFETY

49

## CERTIFICATE OF COMPLIANCE

I certify that this document was prepared with Microsoft Word, and that, according to that program's word-count function, the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 11,198 words.

Respectfully Submitted,

/s/    *Kevin M. Givens*
KEVIN M. GIVENS


## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the above and foregoing Appellee's Brief by email, per Tex. R. App. P. 9.5(b)(1), to Kevin Fine, counsel of record for Appellant, Christopher Jaroszewicz, at kfine@kevinfinelaw.com, on December 21, 2015.

Respectfully Submitted,

/s/    *Kevin M. Givens*
KEVIN M. GIVENS